## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RHAKEEMA WORLEY,<br>ELIZABETH CARABALLO,<br>ISRAEL CARTAGENA,<br>HECTOR DIAZ,<br>DORSEY FUTRELL,<br>DAHAN HAWKINS,<br>MICHELE IORIZZO,<br>PETAL ISAACS,<br>SHARON LAYNE,<br>SANDRA REID,<br>GALE RICHARDSON, and<br>SHARON VICK,<br><br>     Plaintiffs,<br><br>  v.<br><br><br>CITY OF NEW YORK and NEW YORK<br>CITY POLICE DEPARTMENT,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No: 1:17-cv-04337<br>) (JURY TRIAL DEMANDED)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiffs, by and through the undersigned counsel, the law firms of Woodley &

McGillivary LLP and Spivak Lipton LLP, for their Complaint against the City of New York and

the New York City Police Department hereby state as follows:

### PARTIES

1.     Plaintiffs identified in the caption of the instant Complaint have given their

written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). A list of all

plaintiffs who have consented to join this action to date, along with the date their consent to join

form was filed in Court is attached hereto as Exhibit A. Plaintiffs bring this action as a collective

action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") against

the defendants, the City of New York and the New York City Police Department ("Defendants" or "City"), on behalf of themselves because defendants failed to pay all plaintiffs overtime pay in the manner required by the FLSA, 29 U.S.C. 201, *et seq.*

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

4.    All plaintiffs listed in Exhibit A, and all future opt-in plaintiffs (collectively referred to herein as "plaintiffs") are, and have been at all times material herein, employed by the City of New York and the New York City Police Department ("NYPD") in the position of School Safety Agent ("SSA").

5.    At all times material herein, plaintiff Rhakeema Worley has worked as an SSA at the Bronx School for Law, Government and Justice, located at 244 East 163rd St, Bronx, NY and Mott Haven Educational Campus, located at 730 Concourse Village W, Bronx, NY in the Bronx West Command. At all times material herein, plaintiff Elizabeth Caraballo has worked as an SSA at Park West High School, located at 525 West 50th St, New York, NY, in the Manhattan South Command. At all times material herein, plaintiff Israel Cartagena has worked as an SSA at P.S. 302 located at 350 Linwood St., Brooklyn, NY in the Brooklyn North Command. At all times material herein, plaintiff Hector Diaz has worked as an SSA at M.S. 424, located at 730 Bryant Ave., Bronx, NY in the Bronx East Command. At all times material herein, plaintiff Dorsey Futrell has worked as an SSA based out of Roosevelt High School, located at 500 E. Fordham Rd., Bronx, NY in the Bronx West Command. At all times material herein, plaintiff Dahan

Hawkins has worked as an SSA at M.S. 158, located at 46-35 Oceania St., Bayside, NY and at P.S. 198, located at 1700 3rd Ave., New York, NY in the Bronx East Command. At all times material herein, plaintiff Michele Iorizzo has worked as an SSA at New Dorp High School, located at 46 New Dorp Ln., Staten Island, NY in the Staten Island Command. At all times material herein, plaintiff Petal Isaacs has worked as an SSA at Precinct 69 located at 9720 Foster Ave., Brooklyn, NY in the Brooklyn South Command. At all times material herein, plaintiff Sharon Layne has worked as an SSA at the Grand Street Campus, located at 850 Grand St., Brooklyn, NY in the Brooklyn North Command. At all times material herein, plaintiff Sandra Reid has worked as an SSA at Queens Central Headquarters, located at 11 Queens Plaza, Long Island City, NY in the Citywide Command. At all times material herein, plaintiff Gale Richardson has worked as an SSA at PS 13, Clement C. Moore School, located at 55-01 94th St, Queens, NY, in the Queens North Command. At all times material herein, plaintiff Sharon Vick has worked as an SSA at P.S.M.S 124, Osmond A. Church School, located at 129-15 150th Ave, Queens, NY, in the Queens South Command.

6.      Plaintiffs bring this action for a declaratory judgment, back pay and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the defendants' willful and unlawful violations of federal law as described in this Complaint.

7.      Each of the plaintiffs in this action while employed by defendants has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

8.      Defendant City of New York is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York, NY 10007 and may

be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, NY 10007.

9.      Defendant New York City Police Department is an administrative division of the City of New York and is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The NYPD's principal office is located at One Police Plaza, New York, NY 10007.

10.      Within the last three years and continuing to date, while employed by defendants as SSAs with the NYPD, the primary job duty of plaintiffs Worley, Caraballo, Cartagena, Diaz, Futrell, Hawkins, Iorizzo, Isaacs, Layne, Reid, Richardson, Vick (collectively referred to herein as "representative plaintiffs"), and all other plaintiffs (i.e., the plaintiffs listed in Exhibit A and all future opt-in plaintiffs) is to provide in New York City's public school buildings an environment conducive to learning, where students, faculty staff and visitors can be free from hostility and disruptions that could negatively impact the educational process. Plaintiffs do this by providing security services in New York City's public-school buildings and surrounding areas. Plaintiffs' regular job duties include, but are not limited to: patrolling school facilities and the surrounding areas; operating and maintaining security equipment, including but not limited to metal detectors, x-ray machines and vertex machines; performing security screenings by verifying identification and screening personal belongings; escorting visitors; responding to altercations between students and other persons; de-escalating conflicts; separating persons involved in altercations; reporting unsafe and unusual conditions; reporting possible child abuse, drugs, alcohol, gang participation, or psychological problems; maintaining crowd control;

facilitating community outreach; safeguarding seized property; writing incident reports; and maintaining an activity log.

11.     All plaintiffs listed in Exhibit A and all future opt-in plaintiffs, perform the job duties described in Paragraph 10 in every public school facility in the City of New York, including public schools located in each of the City's five boroughs.

12.     While working for defendants as SSAs, all plaintiffs routinely work over 40 hours per week without receiving proper overtime compensation at the rate of one and one half times their regular rate of pay for all hours worked over 40 in a workweek. Specifically, all plaintiffs are scheduled to work 42 hours and 30 minutes per week as their regular schedule, with 30 minutes automatically deducted per day for meal periods. In addition, as described in further detail below, all plaintiffs frequently perform the job duties described in Paragraph 10 before the start of their scheduled shift, after the end of their scheduled shift, and during their 30-minute unpaid meal periods.

13.     Because all plaintiffs are scheduled for 42 hours and 30 minutes per week with 30 minutes per day automatically deducted for meal periods, they are scheduled to work, and do work, at least 40 hours per workweek. Thus, any time that all plaintiffs perform the uncompensated job duties described in Paragraph 10 outside of their regularly scheduled shift or during their unpaid meal periods, they necessarily perform overtime work above the 40 hour per workweek threshold that the FLSA establishes as requiring overtime pay. 29 U.S.C. § 207(a).

14.     At least one workweek per month, and often more than one workweek per month, all plaintiffs worked over 40 hours performing the job duties described in Paragraph 10. Defendants City of New York and NYPD have violated the FLSA in the following ways: (1) failing to pay plaintiffs for all hours worked by failing to compensate plaintiffs for work

performed before the official start time of their shift, after the official end time of their shifts, and during their unpaid meal periods, as well as failing to pay plaintiffs for all hours worked by failing to compensate plaintiffs for overtime work in excess of an 80-hour per month cap that defendants imposed as the maximum number of hours for which it will pay overtime in a month; (2) failing to pay plaintiffs for the time spent traveling between work sites when scheduled for an overtime shift immediately following their regularly scheduled shift; (3) failing to pay plaintiffs for all hours worked in excess of 40 hours per workweek at the rate of one and one half times their regular rate of pay by excluding a night shift differential from plaintiffs' regular rate of pay; (4) failing to pay plaintiffs for all hours worked in excess of 40 hours per workweek at the rate of one and one half times their regular rate of pay by paying plaintiffs compensatory time for hours worked over 40 in a workweek at a straight time rate; and (5) failing to pay plaintiffs for all hours worked in excess of 40 hours in a workweek in a timely manner.

15.    At all times material herein, all plaintiffs are similarly situated to the representative plaintiffs identified in the text of this Complaint because they perform the job duties described in Paragraph 10, work hours similar to those described in Paragraphs 12-13, and because they are all subject to the NYPD's and City's unlawful pay policies and practices as described in Paragraph 14.


### *Failure to Compensate Plaintiffs for All Hours Worked*

16.    Defendants fail and refuse to compensate plaintiffs for all overtime work that defendants have suffered or permitted plaintiffs to work.

17.    At least one workweek per month, all plaintiffs perform the job duties described in Paragraph 10 outside of their regularly scheduled shifts, including before and after their shift

as well as during their unpaid meal periods, without compensation. Defendants are aware that this time is being worked because, among other things, the defendants track plaintiffs' worktime, their supervisors and managers see the work being performed, and the nature of the plaintiffs' work requires them to work this additional time.

18.    At least one workweek per month, all plaintiffs perform the job duties described in Paragraph 10 outside of their regularly scheduled shift, including before and after their scheduled shifts and during their unpaid meal periods, because their job requires them to immediately respond to and intervene in incidents occurring within their assigned school and surrounding areas, including but not limited to fights among students. Given the unpredictable nature of their job, plaintiffs cannot avoid responding to incidents simply because they are outside of their scheduled time or on their lunch break.

19.    Upon information and belief, during at least two workweeks per year over the course of the last three years, defendants failed to compensate all plaintiffs for all hours worked because defendants have imposed an 80-hour per month cap on the earning of overtime compensation by all plaintiffs. When plaintiffs work overtime hours beyond the 80-hour cap, defendants refuse to compensate plaintiffs for these additional hours. To discourage plaintiffs from reporting overtime work, defendants also discipline SSAs for working overtime hours beyond the 80-hour per month cap, often by prohibiting them from receiving compensation for any overtime hours in the subsequent month or by taking away already-accrued leave.

20.    Plaintiffs provide the following examples of unpaid pre-shift, post-shift, and meal period work from representative plaintiffs, who are similarly situated to all plaintiffs listed on Exhibit A and all future opt-in plaintiffs.

*Rhakeema Worley*

21.    Plaintiff Rhakeema Worley is an SSA who has worked in the Bronx West

Command at Mott Haven Educational Campus since approximately September 2016.

Approximately 3-4 weeks per month, Plaintiff Worley works over 40 hours in a workweek, after

excluding her unpaid lunches. When plaintiff Worley works over 40 hours in a workweek, she

performs the job duties described in Paragraph 10. Additionally, when plaintiff Worley works

over 40 hours in a workweek while performing these duties, defendants fail to compensate her,

although the work is observed by or known to supervisors. Defendants fail to compensate

plaintiff even when the work performed is recorded on defendants' timekeeping system.

22.    Plaintiff Worley's regularly scheduled shift begins at 7:00 am and ends at 3:30 pm,

Monday through Friday. Plaintiff Worley arrives approximately 15 to 20 minutes prior to the

scheduled shift start time every day. She immediately begins working upon arrival, without

being compensated for that pre-shift work time. During that time, plaintiff Worley performs

tasks such as opening and unlocking the building, preparing the metal detector scanning

equipment, preparing sign in sheets, turning off alarms, and other work tasks as described in

Paragraph 10. Plaintiff Worley also continues working after the end of her shift for

approximately 15-30 minutes, on average, approximately 2-3 times per week, without being

compensated for all of this post-shift work time. During this unpaid work time plaintiff Worley is

performing the duties described in Paragraph 10, including but not limited to, preparing and

completing incident reports and other paperwork that must be completed before she leaves the

facility. When plaintiff Worley performs these uncompensated work activities prior to and after

her paid shift – especially in weeks in which she works other scheduled overtime – it causes her

to work in excess of 40 hours per week, for which she is not properly compensated with overtime

pay at the rate of one-and-one-half times her regular rate of pay. In addition, during these same weeks in which she performs uncompensated work activities outside of her scheduled shift time, plaintiff Worley performs the duties described in Paragraph 10 during her uncompensated meal periods approximately 3-4 times per week, for example by responding to incidents, like fights among students, and completing the necessary incident reports and paperwork related to these incidents. This results in her working well in excess of 40 hours each workweek, for which she is not compensated with overtime pay

23.    For example, during the week of November 7-11, 2016, plaintiff Worley worked a total of 51 hours and 15 minutes, excluding her unpaid meal periods, but she was not compensated for at least 1 hour and 15 minutes of time that she worked. In addition to this 1 hour and 15 minutes of uncompensated time, she worked through a portion of, or her entire, meal period on 3 days. During this work time, plaintiff Worley performed the regular duties identified in Paragraph 10 and in Paragraph 22.

### *Elizabeth Caraballo*

24.    Plaintiff Elizabeth Caraballo has been working as an SSA for six years and is currently assigned to the Manhattan South Command at Park West High School in Manhattan, NY. Approximately 3-4 weeks per month Plaintiff Caraballo works over 40 hours in a workweek, excluding her unpaid lunches. When plaintiff Caraballo works over 40 hours in a workweek, she performs the duties described in Paragraph 10. When plaintiff Caraballo works over 40 hours in a workweek while performing these job duties, defendants fail to compensate her, although the work is observed by or known to supervisors. Defendants fail to compensate plaintiff even when the work performed is recorded on defendants' timekeeping system.

25. Plaintiff Caraballo's regularly scheduled shift begins at 7:30 am and ends at 4:00 pm, Monday through Friday. Plaintiff Caraballo arrives approximately 45 minutes to one hour prior to the scheduled shift start time every day. Upon arrival, she begins working immediately, without being compensated for that pre-shift work time. During this unpaid work time, plaintiff Caraballo is performing the duties described in Paragraph 10, including preparing paperwork and equipment, preparing logs, and screening students through the security screening site. When plaintiff Caraballo performs these uncompensated work activities prior to her paid shift – especially in weeks in which she works other scheduled overtime – it causes her to work in excess of 40 hours per week, for which she is not properly compensated with overtime pay at the rate of one-and-one-half times her regular rate of pay. In addition, during these same weeks in which she performs uncompensated work activities outside of her scheduled shift time, plaintiff Caraballo performs the duties described in Paragraph 10 during her uncompensated meal periods approximately 3-4 times per week, including responding to incidents, responding to fire alarms, and completing reports related to these responses. This results in her working well in excess of 40 hours each workweek, for which she is not properly compensated.

26. In each of the instances of unpaid overtime work described in Paragraphs 21-56, plaintiffs have also suffered a violation of the FLSA's prompt payment requirements because the overtime work remains unpaid, meaning defendants have delayed the payment of overtime compensation beyond the next pay period for which the plaintiffs are paid for their regularly scheduled work hours.

### *Israel Cartagena*

27. Plaintiff Israel Cartagena is an SSA who has been assigned to the Brooklyn North Command at P.S. 302 for 14 years. Approximately 3-4 weeks per month, plaintiff Cartagena

works over 40 hours in a workweek, excluding his unpaid lunches. When plaintiff Cartagena works over 40 hours in a workweek, he performs the duties described in Paragraph 10. When plaintiff Cartagena works over 40 hours in a workweek while performing these job duties, defendants fail to compensate him, although the work is observed by or known to supervisors. Defendants fail to compensate plaintiff even when the work performed is recorded on defendants' timekeeping system.

28.     Plaintiff Cartagena's regularly scheduled shift begins at 6:00 am and ends at 2:30 pm, Monday through Friday. Plaintiff Cartagena arrives approximately 15-20 minutes prior to his scheduled shift start time every day. Upon arrival, he immediately begins working, without being compensated for that pre-shift work time. During this unpaid work time plaintiff Cartagena performs the duties described in Paragraph 10, including opening and unlocking the building, preparing for roll call, preparing for the arrival of students and staff, and handling any required paperwork. When plaintiff Cartagena performs these uncompensated work activities prior to his paid shift – especially in weeks in which he works other scheduled overtime – it causes him to work in excess of 40 hours per week, for which he is not properly compensated with overtime pay at the rate of one and one-half times his regular rate of pay. In addition, during these same weeks in which he performs uncompensated work activities outside his scheduled shift time, plaintiff Cartagena performs the duties described in Paragraph 10 during his uncompensated meal periods approximately 2-4 times per week, including, responding to fights, investigating reports of drug use, conducting searches, filling out paperwork, and patting down students. This results in his working well in excess of 40 hours each workweek, for which he is not compensated.

29.    For example, during the weeks of May 1-5, 2017, and May 15-19, 2017, plaintiff Cartagena worked a total of 58 hours each week, excluding his meal periods, but was not compensated for at least 1 hour and 40 minutes of time for each of those two weeks that he worked. In addition to this 1 hour and 40 minutes of uncompensated time, on Monday, May 8, 2017 and Wednesday, May 10, 2017, plaintiff Cartagena worked during a portion of or his entire meal period without being compensated for this work time. During this work time, plaintiff Cartagena performed the regular duties identified in Paragraph 10 and Paragraph 28.

### *Hector Diaz*

30.    Plaintiff Hector Diaz has been an SSA for 19 years and is currently assigned to the Bronx East Command at M.S. 424. Approximately 3-4 weeks per month, plaintiff Diaz works over 40 hours in a workweek, excluding his unpaid lunches. When plaintiff Diaz works over 40 hours in a workweek, he performs the duties described in Paragraph 10. When plaintiff Diaz works over 40 hours in a workweek while performing these job duties, defendants fail to compensate him, although the work is observed by or known to supervisors. Defendants fail to compensate plaintiff even when the work performed is recorded on defendants' timekeeping system.

31.    Plaintiff Diaz's regularly scheduled shift begins at 6:30 am and ends at 3:00 pm, Monday through Friday. Plaintiff Diaz arrives approximately 45-60 minutes prior to his scheduled shift start time every day. Upon arrival, he immediately begins working, without being compensated for that pre-shift work time, performing the tasks described in Paragraph 10, including, unlocking and opening the doors for the staff, preparing the security scanning machines, and completing required paperwork, among other things. When plaintiff Diaz performs these uncompensated work activities prior to his paid shift – especially in weeks in

which he works other scheduled overtime – it causes him to work in excess of 40 hours per week, for which he is not properly compensated with overtime pay at the rate of one and one-half times his regular rate of pay. In addition, during these same weeks in which he performs uncompensated work activities outside his scheduled shift time, plaintiff Diaz performs the duties described in Paragraph 10 during his uncompensated meal periods approximately 4-5 times per week, including assisting other SSAs in responding to incidents, conducting searches, and completing required paperwork. This results in his working well in excess of 40 hours each workweek, for which he is not properly compensated.

32.    For example, during the week of April 24-28, 2017, plaintiff Diaz worked a total of 67 hours and 30 minutes, excluding his meal periods, and was not compensated for at least 5 hours of time that he worked. In addition to any regularly scheduled and uncompensated time that plaintiff worked, during each day of the week of May 8-12, 2017, plaintiff Diaz worked through his entire meal period without being compensated for this work time. During this work time, plaintiff Diaz performed the regular duties identified in Paragraph 10 and Paragraph 31.

### *Dorsey Futrell*

33.    Plaintiff Dorsey Futrell has been working as an SSA for 29 years and is currently assigned to the Bronx West Command at Roosevelt High School. Approximately 3-4 weeks per month, plaintiff Futrell works over 40 hours in a workweek, excluding his unpaid lunches. When plaintiff Futrell works over 40 hours in a workweek, he performs the duties described in Paragraph 10. When plaintiff Futrell works over 40 hours in a workweek while performing these job duties, defendants fail to compensate him, although the work is observed by or known to supervisors. Defendants fail to compensate plaintiff even when the work performed is recorded on defendants' timekeeping system.

34.     Plaintiff Futrell's regularly scheduled shift begins at 6:30 am and ends at 3:00 pm, Monday through Friday. Plaintiff Futrell arrives approximately 20-25 minutes prior to his scheduled shift start time every day to pick up equipment and prepare necessary paperwork. Upon arrival, he immediately begins working, without being compensated for that pre-shift work time. Plaintiff Futrell also continues working after the end of his shift at 3:00 pm for 1 hour, on average, approximately 2 times per week, before his scheduled overtime shift begins at 4:00 pm, without being compensated for all of this post-shift work time. During this unpaid work time plaintiff Futrell performs the duties described in Paragraph 10, including assisting in school dismissals and completing required paperwork. When plaintiff Futrell performs these uncompensated work activities prior to and after his paid shift – especially in weeks in which he works other scheduled overtime – it causes him to work in excess of 40 hours per week, for which he is not properly compensated with overtime pay at the rate of one and one-half times his regular rate of pay. In addition, during these same weeks in which he performs uncompensated work activities outside his scheduled shift time, plaintiff Futrell performs the duties described in Paragraph 10 during his uncompensated meal periods approximately 4-5 times per week, including responding to incidents, monitoring for and responding to gang activities, and preparing necessary paperwork related to these tasks. This results in his working well in excess of 40 hours each workweek, for which he is not properly compensated.

35.     For example, during the week of May 1 to 5, 2017, plaintiff Futrell worked a total of 53 hours and 40 minutes, excluding his meal periods, but was not compensated for at least 3 hours and 40 minutes of time that he worked. In addition to any regularly scheduled and uncompensated time that plaintiff worked, during each day of the week of April 17-21, 2017, plaintiff Futrell worked through his entire meal period without being compensated for this work

time. During this work time, plaintiff Futrell performed the regular duties identified in Paragraph 10 and Paragraph 34.

*Dahan Hawkins*

36.    Plaintiff Dahan Hawkins is an SSA who has been assigned to the Bronx East Command at M.S. 158 and P.S. 198 since 2002. Approximately 3-4 weeks per month, plaintiff Hawkins works over 40 hours in a workweek, excluding her unpaid lunches. When plaintiff Hawkins works over 40 hours in a workweek, she performs the duties described in Paragraph 10. When plaintiff Hawkins works over 40 hours in a workweek while performing these job duties, defendants fail to compensate her, although the work is observed by or known to supervisors. Defendants fail to compensate plaintiff even when the work performed is recorded on defendants' timekeeping system.

37.    Plaintiff Hawkins's regularly scheduled shift begins at 7:00 am and ends at 3:30 pm, Monday through Friday. Additionally, Plaintiff Hawkins regularly works a scheduled overtime shift from 3:30 pm until 7:00 pm, Monday through Thursday. Plaintiff Hawkins arrives approximately 15-30 minutes prior to the scheduled shift start time every day. Upon arrival, she immediately begins working, without being compensated for that pre-shift work time. During this unpaid work time plaintiff Hawkins is performing the duties described in Paragraph 10, including unlocking the doors of the school, preparing security screening equipment, preparing log books, and other related tasks. When plaintiff Hawkins performs these uncompensated work activities prior to her paid shift – especially in weeks in which she works other scheduled overtime – it causes her to work in excess of 40 hours per week, for which she is not properly compensated with overtime pay at the rate of one-and-one-half times her regular rate of pay. In addition, during these same weeks in which she performs uncompensated work activities outside

her scheduled shift time, plaintiff Hawkins performs the duties described in Paragraph 10 during

her uncompensated meal periods approximately 2-4 times per week by responding to incidents,

conducting searching, and completing required paperwork. This results in her working well in

excess of 40 hours each workweek, for which she is not properly compensated.

38.     For example, during the week of May 1-5, 2017, plaintiff Hawkins worked a total

of 56 hours and 30 minutes, excluding her meal periods, but she was not compensated for at least

1 hour and 30 minutes of time that she worked. In addition to the 1 hour and 30 minutes of

uncompensated time, on 2 days during that week, plaintiff Hawkins worked through a portion of,

or her entire meal period without being compensated for this work time. During this work time,

plaintiff Hawkins performed the regular duties identified in Paragraph 10 and Paragraph 37.

*Michele Iorizzo*

39.     Plaintiff Michele Iorizzo is an SSA assigned to the Staten Island Command at

New Dorp High School in Staten Island, NY. Approximately 3-4 weeks per month, plaintiff

Iorizzo works over 40 hours in a workweek, excluding her unpaid lunches. When plaintiff

Iorizzo works over 40 hours in a workweek, she performs the duties described in Paragraph 10.

When plaintiff Iorizzo works over 40 hours in a workweek while performing these job duties,

defendants fail to compensate her, although the work is observed by or known to supervisors.

Defendants fail to compensate plaintiff even when the work performed is recorded on

defendants' timekeeping system.

40.     Plaintiff Iorizzo's regularly scheduled shift begins at 7:00 am and ends at 3:30

pm, Monday through Friday. Approximately 4-5 days a week Plaintiff Iorizzo participates in

telephone calls regarding her work duties and complete other tasks approximately 30 minutes

prior to her scheduled shift start time before she clocks-in. Plaintiff Iorizzo also continues

working after the end of her shift for approximately 10-30 minutes, on average, approximately 4-5 times per week, without being compensated for this post-shift work time. During this unpaid work time plaintiff Iorizzo performs the duties described in Paragraph 10, for example completing required paperwork and City-mandated reports that must be completed before the end of the shift. When plaintiff Iorizzo performs these uncompensated work activities prior to and after her paid shift – especially in weeks in which she works other scheduled overtime – it causes her to work in excess of 40 hours per week, for which she is not properly compensated with overtime pay at the rate of one and one-half times her regular rate of pay. In addition, during these same weeks in which she performs uncompensated work activities outside her scheduled shift time, plaintiff Iorizzo performs the duties described in Paragraph 10 during her uncompensated meal periods approximately 2-5 times per week, including responding to incidents and completing required incident reports. This results in her working well in excess of 40 hours each workweek, for which she is not compensated with overtime pay.

41.     For example, during the week of April 24- 28, 2017, plaintiff Iorizzo worked a total of 57 hours, excluding her meal periods, but she was not compensated for at least 4 hours and 30 minutes of time that she worked. In addition to the 4 hours and 30 minutes of uncompensated time, on Thursday, April 27, 2017 and Friday, April 28, 2017, plaintiff Iorizzo worked through her entire meal period without being compensated for this work time. During this work time, plaintiff Iorizzo performed the regular duties identified in Paragraph 10 and Paragraph 40.

<u>*Petal Isaacs*</u>

42.     Plaintiff Petal Isaacs is an SSA who has been assigned to the Brooklyn South Command at Precinct 69 since 2010. Approximately 3-4 weeks per month, plaintiff Isaacs works

over 40 hours in a workweek excluding her unpaid lunches. When plaintiff Isaacs works over 40 hours in a workweek, she performs the duties described in Paragraph 10. When plaintiff Isaacs works over 40 hours in a workweek while performing these job duties, defendants fail to compensate her, although the work is observed by or known to supervisors. Defendants fail to compensate plaintiff even when the work performed is recorded on defendants' timekeeping system.

43.     Plaintiff Isaacs's regularly scheduled shift begins at 7:30 am and ends at 4:00 pm, Monday through Friday. Plaintiff Isaacs arrives at Precinct 69 approximately 30 minutes prior to her scheduled shift start time every day. Upon arrival, she immediately begins working, without being compensated for that pre-shift work time, including picking up equipment and completing required logs and paperwork. Plaintiff Isaacs also continues working after the end of her shift for approximately 10-15 minutes, on average, approximately 4-5 times per week, without being compensated for all of this post-shift work time. During this unpaid work time plaintiff Isaacs performs the duties described in Paragraph 10, including inspecting equipment and completing paperwork. When plaintiff Isaacs performs these uncompensated work activities prior to and after her paid shift – especially in weeks in which she works other scheduled overtime – it causes her to work in excess of 40 hours per week, for which she is not properly compensated with overtime pay at the rate of one and one-half times her regular rate of pay. In addition, during these same weeks in which she performs uncompensated work activities outside her scheduled shift time, plaintiff Isaacs performs the duties described in Paragraph 10 during her uncompensated meal periods approximately 2-5 times per week, including transporting school personnel from building to building, responding to fights, and completing required paperwork.

This results in her working well in excess of 40 hours each workweek, for which she is not properly compensated.

44.    For example, during the week of April 10-14, 2017, plaintiff Isaacs worked a total of 60 hours, excluding her meal periods, but she was not compensated for at least 3 hours and 30 minutes of time that she worked. In addition to the 3 hours and 30 minutes of uncompensated time, during each day of that week, plaintiff Isaacs worked through her entire meal period without being compensated for this work time. During this work time, plaintiff Isaacs performed the regular duties identified in Paragraph 10 and Paragraph 43.

*Sharon Layne*

45.    Plaintiff Sharon Layne is an SSA who has been assigned to the Brooklyn North Command at Grand Street Campus in Brooklyn, NY since 2007. Approximately 3-4 weeks per month Plaintiff Layne works over 40 hours in a workweek, excluding her unpaid lunches. When plaintiff Layne works over 40 hours in a workweek, she performs the duties described in Paragraph 10. When plaintiff Layne works over 40 hours in a workweek while performing these job duties, defendants fail to compensate her, although the work is observed by or known to supervisors. Defendants fail to compensate plaintiff even when the work performed is recorded on defendants' timekeeping system.

46.    Plaintiff Layne's regularly scheduled shift begins at 7:30 am and ends at 4:00 pm, Monday through Friday. Upon arrival, she begins working immediately, and plaintiff Layne also continues working after the end of her shift for approximately 30-60 minutes, on average, approximately 3-4 times per week, without being compensated for all of this post-shift work time. During this unpaid work time, plaintiff Layne is performing the duties described in Paragraph 10, including working on school-related presentations. When plaintiff Layne performs

these uncompensated work activities prior to and after her paid shift – especially in weeks in which she works other scheduled overtime – it causes her to work in excess of 40 hours per week, for which she is not properly compensated with overtime pay at the rate of one-and-one-half times her regular rate of pay. In addition, during these same weeks in which she performs uncompensated work activities outside of her scheduled shift time, plaintiff Layne performs the duties described in Paragraph 10 during her uncompensated meal periods approximately 2-3 times per month including responding to fights and assisting in incident responses. This results in her working well in excess of 40 hours each workweek, for which she is not properly compensated.

47.      For example, during the week of April 24-28, 2017, plaintiff Layne worked a total of 70 hours, excluding her unpaid meal periods, but she was not compensated for at least 4 hours and 30 minutes of time that she worked. In addition to the 4 hours and 30 minutes of uncompensated time, on Monday April 24, 2017, plaintiff Layne worked through her entire meal period without being compensated for this work time. During this work time, plaintiff Layne performed the regular duties identified in Paragraph 10 and Paragraph 46.

<u>*Sandra Reid*</u>

48.      Plaintiff Sandra Reid is an SSA who has been assigned to the Citywide Command at Queens Central Headquarters since 2006. Approximately 3-4 weeks per month, plaintiff Reid works over 40 hours in a workweek, excluding her unpaid lunches. When plaintiff Reid works over 40 hours in a workweek, she performs the duties described in Paragraph 10. When plaintiff Reid works over 40 hours in a workweek while performing these job duties, defendants fail to compensate her, although the work is observed by or known to supervisors. Defendants fail to

compensate plaintiff even when the work performed is recorded on defendants' timekeeping system.

49.    Plaintiff Reid's regularly scheduled shift begins at 6:00 am and ends at 2:30 pm, Monday through Friday. Plaintiff Reid arrives approximately 15-30 minutes prior to the scheduled shift start time every day. Upon arrival, she immediately begins working, without being compensated for that pre-shift work time, by preparing paperwork, preparing security scanners and equipment, and other tasks necessary to start the workday. Plaintiff Reid also continues working after the end of her shift for approximately 30-60 minutes, on average, approximately 4-5 times per week, without being compensated for all of this post-shift work time. During this unpaid work time plaintiff Reid is performing the duties described in Paragraph 10, including preparing paperwork for the next day and scanning required paperwork. When plaintiff Reid performs these uncompensated work activities prior to and after her paid shift – especially in weeks in which she works other scheduled overtime – it causes her to work in excess of 40 hours per week, for which she is not properly compensated with overtime pay at the rate of one-and-one-half times her regular rate of pay. In addition, during these same weeks in which she performs uncompensated work activities outside her regularly scheduled shift time, plaintiff Reid performs the duties described in Paragraph 10 during her uncompensated meal periods approximately 4-5 days per week, including responding to work inquiries and completing paperwork. This results in her working well in excess of 40 hours each workweek, for which she is not properly compensated.

50.    For example, during the week of February 6-10, 2017, plaintiff Reid worked a total of 58 hours and 30 minutes, excluding her meal periods, but she was not compensated for at least 3 hours of time that she worked. In addition to the 3 hours of uncompensated time, on 4

days during that week, plaintiff Reid worked through a portion of, or her entire meal period

without being compensated for this work time. During this work time, plaintiff Reid performed

the regular duties identified in Paragraph 10 and Paragraph 49.

*Gale Richardson*

51.    Plaintiff Gale Richardson is an SSA who has been assigned to the Queens North

Command at P.S. 13, Clement C. Moore School, in Queens, NY, since 1999. Approximately 3-4

weeks per month plaintiff Richardson works over 40 hours in a workweek, excluding her unpaid

lunches. When plaintiff Richardson works over 40 hours in a workweek, she performs the duties

described in Paragraph 10. When plaintiff Richardson works over 40 hours in a workweek while

performing these job duties, defendants fail to compensate her, although the work is observed by

or known to supervisors. Defendants fail to compensate plaintiff even when the work performed

is recorded on defendants' timekeeping system.

52.    Plaintiff Richardson's regularly scheduled shift begins at 7:00 am and ends at

3:30 pm, Monday through Friday. Plaintiff Richardson arrives approximately 30-35 minutes

prior to the scheduled shift start time every day. Upon arrival, she begins working immediately,

without being compensated for that pre-shift work time. During this unpaid work time, plaintiff

Richardson is performing the duties described in Paragraph 10, including opening the school,

preparing the security screening equipment, and preparing required logs. When plaintiff

Richardson performs these uncompensated work activities prior to her paid shift – especially in

weeks in which she works other scheduled overtime – it causes her to work in excess of 40 hours

per week, for which she is not properly compensated with overtime pay at the rate of one-and-

one-half times her regular rate of pay. In addition, during these same weeks in which she

performs uncompensated work activities outside of her scheduled shift time, plaintiff Richardson

performs the duties described in Paragraph 10 during her uncompensated meal periods approximately 1-3 times per month, including responding to incidents within the school, and preparing incident reports. This results in her working well in excess of 40 hours each workweek, for which she is not properly compensated.

53.    For example, during the week of May 15-19, 2017, plaintiff Richardson worked a total of 48.5 hours, excluding her unpaid meal periods, but she was not compensated for at least 2 hours and 30 minutes of time that she worked. In addition to the 2 hours and 30 minutes of uncompensated time, on Thursday, May 18, 2017, plaintiff Richardson worked through her entire meal period without being compensated for this work time. During this work time, plaintiff Richardson performed the regular duties identified in Paragraph 10 and Paragraph 52.

### Sharon Vick

54.    Plaintiff Sharon Vick has been working as an SSA for 17 years and is currently assigned to the Queens South Command at P.S.M.S 124, Osmond A. Church School, in Queens, NY. Approximately 3-4 weeks per month Plaintiff Vick works over 40 hours in a workweek, excluding her unpaid lunches. When plaintiff Vick works over 40 hours in a workweek, she performs the duties described in Paragraph 10. When plaintiff Vick works over 40 hours in a workweek while performing these job duties, defendants fail to compensate her, although the work is observed by or known to supervisors. Defendants fail to compensate plaintiff even when the work performed is recorded on defendants' timekeeping system.

55.    Plaintiff Vick's regularly scheduled shift begins at 7:00 am and ends at 3:30 pm, Monday through Friday. Plaintiff Vick arrives approximately 15-30 minutes prior to the scheduled shift start time every day. Upon arrival, she begins working immediately, without being compensated for that pre-shift work time. During this unpaid work time, plaintiff Vick is

performing the duties described in Paragraph 10, including opening the school, preparing the

security screening equipment, and preparing logs and other paperwork. When plaintiff Vick

performs these uncompensated work activities prior to her paid shift – especially in weeks in

which she works other scheduled overtime – it causes her to work in excess of 40 hours per

week, for which she is not properly compensated with overtime pay at the rate of one-and-one-

half times her regular rate of pay. In addition, during these same weeks in which she performs

uncompensated work activities outside of her scheduled shift time, plaintiff Vick performs the

duties described in Paragraph 10 during her uncompensated meal periods approximately 1-3

times per month, including responding to incidents and completing required paperwork. This

results in her working well in excess of 40 hours each workweek, for which she is not properly

compensated.

56.    For example, during the week of May 29-June 2, 2017, plaintiff Vick worked a

total of 53 hours and 45 minutes, excluding her unpaid meal periods, but she was not

compensated for at least 1 hour and 15 minutes of time that she worked. In addition to the 1 hour

and 15 minutes of uncompensated time, on Wednesday, May 31, 2017, plaintiff Vick worked

through her entire meal period without being compensated for this work time. During this work

time, plaintiff Vick performed the regular duties identified in Paragraph 10 and Paragraph 55.

*Failure to Compensate Plaintiffs for Travel Time Between Work Sites*

57.    Defendants fail to compensate plaintiffs for time spent traveling between work

sites when plaintiffs perform overtime work at a different school location and/or campus

immediately following their regularly scheduled shift.

58.    When plaintiffs are scheduled for an overtime shift immediately following their

regularly scheduled shift at a school or campus other than their regular duty location, plaintiffs

are required to "clock out" for the time spent traveling from one job site to the next. Plaintiffs will then "clock in" once they arrive at the location of the overtime shift. Because defendants require that they are taken off-the-clock, plaintiffs do not receive any compensation for the time spent traveling between work sites.

59.    Upon information and belief, all plaintiffs have been taken "off-the-clock" for required travel between worksites at least two workweeks per year. Because this travel between worksites occurs only when plaintiffs work overtime (i.e., outside of their regular schedule), all of the uncompensated off-the-clock worksite travel occurred over the 40-hour weekly overtime threshold, but the defendants failed to pay the plaintiffs for this worktime.

60.    All defendants' work locations where plaintiffs are assigned to work are located within 50 miles of each other, and are all within the boundaries of the City of New York.

61.    All plaintiffs are similarly situated because they are routinely denied compensation for travel time between job locations pursuant to defendants' policy and or practice of refusing to pay for this time. The precise amount of uncompensated travel time can be identified through the defendants' timekeeping system and through other work and pay records, which as explained in Paragraphs 66-67, below, are in the defendants' exclusive custody and control and are unavailable to the plaintiffs.

*The Rate at Which Overtime is Paid*

62.    Pursuant to NYPD policy applicable to all plaintiffs through the Civilian Employee Reference Manual, plaintiffs earn night shift differential under the following circumstances: "Civilian employees receive a shift differential (or payment) of an additional 10% added to their hourly salary if more than one (1) hour over their tour duration is worked, excluding meal, between 1800 hours [6:00 p.m.] and 0800 hours [8:00 a.m.]." This means that

25

plaintiffs who have a scheduled start time of 7:00 a.m. or earlier are eligible for night shift differential on a daily basis, and earn night shift differential on a daily basis.

63.    During the last three years, all plaintiffs have, within in the last three years, regularly worked a tour of duty that begins at 6:00 a.m. 6:30 a.m., or 7:00 a.m. because at least one officer is required to begin work at this time in order to open the schools.  Thus, all plaintiffs have worked night shift differential eligible shifts, and have earned nights shift differential.

64.    At least one workweek per month, all plaintiffs have worked overtime outside of the regular shift in the same workweek that they worked a night shift differential eligible shift, and were paid night shift differential. However, in those workweeks where plaintiffs work night shift differential eligible shifts, were paid night shift differential, and worked overtime, the defendant failed to include the night shift differential in their regular rate of pay for purposes of calculating overtime. Instead, in that one workweek a month, the City pays plaintiffs at their basic hourly rate of pay, excluding the amounts paid as night shift differential.

65.    The precise amount of night shift differential pay each plaintiff receives, as well as the overtime rate used by the defendants to pay plaintiffs' night shift differential in the same workweek they work overtime shifts can be identified through the defendants' timekeeping system, and through other work and pay records. These records, by law, are maintained by the defendants.

66.    Pursuant to NYPD policy applicable to all plaintiffs, plaintiffs turn in their timesheets each workweek to their NYPD supervisors and manager, and do not have access to these timesheets once they are submitted as they are in the exclusive possession, custody and control of the defendants. These timesheets will demonstrate the night shift differential eligible

shifts that plaintiffs worked in the same workweek that plaintiffs worked and were paid overtime at their basic hourly rate, instead of the FLSA mandated regular rate of pay.

67.    In addition, the plaintiffs' paystubs (unlike the specific payroll data that, upon information and belief, is maintained by and available to the defendants and unavailable to the plaintiffs) do not allow them to ascertain the precise workweeks in which the plaintiffs worked a night shift differential eligible shift in the same week he or she worked overtime, because they simply show "80" hours each pay period, along with the amount the employees receive for that pay period. The records available to the plaintiffs (unlike those available to the City) do not allow them to ascertain the weeks in which they worked a night shift differential eligible shift and earned this additional payment, in the same workweek that he or she worked overtime.

*Payment of Compensatory Time at the Rate of One Hour for Each Hour of Overtime Worked*

68.    All plaintiffs work in excess of 40 hours in a workweek and receive compensation for hours in compensatory time rather than in cash, are paid one hour of compensatory time for each hour of overtime in excess of 40 hours in at least two workweeks per year in each of the last three years.

69.    All plaintiffs are similarly situated and routinely work more than 40 hours in a workweek, but are denied proper compensation for hours worked in excess of 40 because defendants continue to provide compensatory time at an hour-for-hour, or straight time, rate. Upon information and belief, plaintiffs have requested compensatory time in lieu of cash when they worked overtime during the recovery period.  As described in Paragraphs 66-67 above, the precise amount of straight time compensatory time for hours worked over 40 in a workweek received by each similarly situated plaintiff can be identified through the defendants'

timekeeping system and through other work and pay records which are exclusively available to the defendants, and which are unavailable to the plaintiffs.

*Late Payment of Overtime*

70.    At least one workweek per month, when all plaintiffs work beyond 40 hours in a workweek and are paid overtime compensation, defendants delay the payment of overtime compensation beyond the next pay period for which the plaintiffs are paid for their regularly scheduled work hours. The delay in payment is caused by defendants' managerial staff's failure to transmit purportedly necessary information to payroll, because defendants simply do not want to incur the cost for budgetary reasons in that particular financial quarter, or for other reasons that are unrelated to defendants' ability to determine the amount of overtime compensation that is owed to the plaintiffs.

71.    The defendants pay all plaintiffs overtime compensation more than two pay periods after they work and earn that overtime compensation. This late payment of overtime occurs at least one workweek per month for all plaintiffs.

72.    For the reasons set forth above in Paragraphs 66-67, the precise number of times this occurred, and the precise amount of overtime that was paid late, can be identified only by the defendants through the defendants' timekeeping records and through other work and pay records, which are exclusively in the defendants' possession custody and control

73.    Indeed, the FLSA's late payment provisions were enacted specifically because employees are not expected to, nor are they able to, keep track of the hours for which overtime was earned in a given workweek and when the overtime is paid. This obligation falls exclusively on the employer, who must monitor to ensure that overtime is paid in a timely fashion.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7 OF THE FLSA, 29 U.S.C. § 207

74.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 73 in their entirety and restate them herein.

75.    At all times material herein, at least one workweek per month, all plaintiffs have worked hours in excess of 40 hours a week, and they have performed work activities beyond the 40-hour overtime threshold without compensation before the start of their scheduled shifts, after the end of their scheduled shifts, and during their 30-minute unpaid meal period.

76.    At all times material herein, defendants enforced an 80-hour per month cap on overtime. Therefore, in weeks in which SSA plaintiffs worked in excess of 40 hours per week but had already reached the 80-hour cap, defendants failed to compensate plaintiffs for any hours over 80 in that month.

77.    Plaintiffs' work time is identifiable on defendants' internal timekeeping system, and through other work and payroll records. Accordingly, as a result of these pay practices, defendants have failed to provide plaintiffs with the rights and protections provided under Section 7(a) of the FLSA, 29 U.S.C. § 207(a).

78.    Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein.  In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours the employees are suffered or permitted to work in excess of forty hours per week. Defendants have failed to comply with the overtime pay requirements of the FLSA in the manner outlined herein by failing to compensate plaintiffs for

work that they have been suffered or permitted to work before the start of their shift, during their uncompensated meal periods, and after the end of their scheduled shifts.

79.    Section 207 of the FLSA, 29 U.S.C. § 207, as well as the regulations of the U.S. Department of Labor, 29 C.F.R. Part 778, *et seq.*, require that overtime compensation be paid to employees who work in excess of the hourly standards set forth therein.

80.    Pursuant to 29 C.F.R. § 785.38, "[t]ime spent by an employee as part of her principal activity, such as travel from job site to job site during the work day, must be counted as hours worked." Accordingly, when plaintiffs travel between job sites to perform additional work at an alternative location immediately following their regularly scheduled shift, such time must be compensated at one and one half times the plaintiffs' regular rate of pay. Defendants have further failed to comply with the overtime pay requirements of Section 7 of the FLSA by failing to compensate plaintiffs for such travel time and requiring that plaintiffs clock out for the time spent traveling between job locations.

81.    Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq.*, require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions.  Defendants have failed to include some payments that are made in addition to employees' regular pay – specifically, night shift differential pay – in the regular rates of pay at which overtime pay is calculated for the plaintiffs as required under the law.

82.    Defendants' failure to include night shift differential pay in plaintiffs' regular rates of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b).  The failure to include night shift differential pay in plaintiffs' regular rate of pay means that during

weeks in which plaintiffs receive paid overtime compensation for hours worked over 40 in a

workweek, they are paid at a rate that is below the rate mandated by the FLSA.

83.     During the times that plaintiffs have worked in excess of 40 hours in a week, and

plaintiffs have chosen to be compensated in compensatory time, defendants has provided such

compensatory time at the rate of one hour for each hour of overtime worked, or at a straight time

rate.

84.     Section 207(o) of the FLSA, 29 U.S.C. § 207(o), permits public agency

employers such as defendants to provide compensatory time in lieu of cash overtime to their

employees as payment for overtime hours worked, but only provided that certain conditions are

met.  See 29 U.S.C. § 207(o); 29 C.F.R. §§ 553.20-28.  One of the basic requirements is that

employees receive compensatory time at the rate of one and one-half hours of compensatory time

for each hour of overtime worked.  29 U.S.C. § 207(o)(1).  Defendants have violated section 7(o)

of the FLSA, 29 U.S.C. §§ 207(o) by failing and refusing to compensate plaintiffs for their

overtime work at the rate of one and one-half hours of compensatory time for each overtime hour

worked, and instead compensating them at the rate of one hour of compensatory time for each

hour of overtime worked.

85.     The FLSA mandates that overtime compensation be paid on the regular payday

for the period in which such workweek ends. Overtime payments under the FLSA may not be

delayed except as reasonably necessary to compute the amount owed, and in no event shall such

payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. §

778.106. *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 57 (2d Cir. 1998) ("it is clear that the FLSA

requires wages to be paid in a timely fashion"). Defendants have violated these basic principles

by delaying plaintiffs' overtime payments for working in excess of 40 hours a week by weeks

and in some cases months, with such delay not being reasonably necessary to compute plaintiffs' overtime pay, but rather because of a failure by management personnel to approve overtime payments or due to management withholding such payments until the next budgetary quarter.

86.    Defendants' failure to pay plaintiffs FLSA overtime pay in a timely manner and their withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

87.    As a result of the defendants' willful and purposeful violations of the FLSA described in Paragraphs 1 through 86 above, there have become due and owing to all plaintiffs an amount that has not yet been precisely determined. The employment and payroll records for all plaintiffs are in the exclusive possession, custody and control of defendants and their public agencies, and plaintiffs are unable to state at this time the exact amount owing to them, but from these records, all plaintiffs will be able to ascertain the precise extent of these violations of section 7(a) of the FLSA, 29 U.S.C. § 207(a) and § 207(o). Defendants are under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs and other employees similarly situated from which the amount of defendants' liability can be ascertained.

88.    Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their backpay damages for the defendants' failure to pay overtime compensation at all, the defendants' failure to pay overtime (in cash or compensatory time) at the correct rate, and the defendants failure to pay overtime within the FLSA's prompt payment requirements

89.    Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

### DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby demand that their claims be tried before a jury.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray that this Court:

(a)  Enter judgment declaring that the defendants have willfully and wrongfully violated their statutory obligations, and deprived each of the plaintiffs of his and her rights;

(b)  Order a complete and accurate accounting of all the compensation to which the plaintiffs are entitled;

(c)  Award plaintiffs monetary liquidated damages equal to their unpaid compensation;

(d)  Award plaintiffs interest on their unpaid compensation;

(e)  Award plaintiffs their reasonable attorneys' fees to be paid by the defendants, and the costs and disbursements of this action; and

(f)  Grant such other relief as may be just and proper.

Respectfully submitted,

*/s/ Hope Pordy*
Hope Pordy
SPIVAK LIPTON, LLP
1700 Broadway
Suite 2100
New York, NY  10019
Phone: (212) 765-2100
hpordy@spivaklipton.com

*/s/ Gregory K. McGillivary*
Gregory K. McGillivary

33

Sarah M. Block
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC  20005
Phone: (202) 833-8855
gkm@wmlaborlaw.com
smb@wmlaborlaw.com

*Counsel for Plaintiffs*