UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/12/2020

------------------------------------------------------------ X
                                           :

   RHAKEEMA WORLEY, et al.,              :

                               Plaintiffs,    :

                                             :

                      -against-              :

                                             :

   CITY OF NEW YORK, et al.,               :

                                 Defendants. :

------------------------------------------------------------ X

17 Civ. 4337 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

       Plaintiffs -- 3,879 current and former School Safety Agents ("SSAs"), employed by the New York City Police Department's ("NYPD") School Safety Division ("SSD") -- bring this action against the City of New York (the "City") and the NYPD for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a) *et seq.* The parties cross-move for partial summary judgment. For the following reasons, summary judgment is granted in part and denied in part to Plaintiffs and granted in part and denied in part to Defendants.

## I.    BACKGROUND

       Unless otherwise noted, the facts below are drawn from the record and are undisputed.

       Plaintiffs[1] are current or former SSAs who worked within the SSD of the NYPD at some point since June 8, 2014, in the role of SSA Level One. SSA Level Threes act as immediate supervisors to SSA Level Ones. School Safety Supervisors act as immediate supervisors of SSA

---

[1] Pursuant to a so-ordered stipulation, the parties agreed to focus discovery and their summary judgment motions on 103 randomly selected Opt-In Plaintiffs, in addition to the twelve named Plaintiffs, collectively designated the "Phase I Plaintiffs." (Dkt. No. 98). During discovery, Defendants deposed fifty-one Phase I Plaintiffs -- forty-four School-Based SSAs, four MTF SSAs and five Borough Command SSAs (as these terms are defined in the text above), with three SSAs having worked in more than one role during the relevant time. While Defendants note that four SSAs served as both Level Ones and SSA Level Threes during the applicable period, these SSAs seek damages only for the time served as Level Ones. (Dkt. No. 192 at 12/38 n.3).

Level Threes.  Plaintiffs work as SSAs in one of three roles: (1) providing security services at New York City Schools ("School-Based SSAs"); (2) providing security services by vehicle within a particular borough as part of a Mobile Task Force ("MTF SSAs"); and (3) performing office work at Borough Command offices ("Borough Command SSAs").  Plaintiffs assert that School-Based SSAs perform uncompensated work by setting up prior to their paid shift ("pre-shift work") and, for MTF SSAs, picking up their vehicles before tour start times; by having to respond to incidents during unpaid meal-periods ("meal-period work"); and by traveling to a second work location for an overtime shift ("travel-time work").

SSAs generally are scheduled to work forty hours per week and have a designated thirty-minute meal period.  One pay period consists of fourteen days.  SSAs record their time on punch cards and handwritten time sheets and use their punch cards to punch in and out at the beginning and end of each workday.  While thirty minutes are automatically deducted each day for a meal break, SSAs also are required to punch out and in to record the thirty-minute meal period.  Every Friday, SSAs transcribe time from their punch cards to a timesheet and submit it to SSA Level Threes, along with copies of their punch cards.  SSA Level Threes then review, sign and submit the documentation to the School Safety Supervisor for review, who then submits it to the Borough Command.  At Borough Command locations, timekeepers input time for SSAs into the City's electronic timekeeping program, called "CityTime."  Rather than transferring actual punch times on punch cards and timesheets into CityTime, SSAs' regularly scheduled hours are pre-populated into the system by timekeepers.  Because SSAs are classified within CityTime as a "pay-to-schedule" job title, they are paid only for their regularly scheduled shifts unless timekeepers affirmatively input overtime.

SSAs work both "scheduled" and "unscheduled" overtime. Scheduled overtime occurs when SSAs are assigned to scheduled shifts, like an afterschool event, at their own or a different school worksite. Unscheduled overtime occurs when SSAs are required to work in excess of their normally scheduled hours, unrelated to a scheduled program or request. Whether overtime is scheduled or unscheduled, SSAs are compensated only for overtime that has been *authorized* by their supervisors; at the end of each week, SSAs must complete an overtime report stating the amount of overtime worked and must submit it, along with their punch cards and time sheets, to their SSA Level Three for review and signature, who then passes it on to the School Safety Supervisor for the same.

The parties dispute whether, by policy, pre-shift, meal-period and travel-time work is compensated overtime work. Plaintiffs assert that the City does not pay, and SSAs are not permitted to use, unscheduled overtime forms to request compensation for these types of work. Defendants maintain that Plaintiffs are paid for both scheduled and unscheduled overtime, which can include these types of work, and that Plaintiffs have previously submitted unscheduled overtime for pre-shift work.

## II.    LEGAL PRINCIPLES

When parties cross-move for summary judgment, the Court analyzes the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113

(2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When the movant properly supports its motions with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019).

## III. DISCUSSION

In moving for summary judgment, Plaintiffs argue that Defendants violated the FLSA by: (1) failing to compensate Plaintiffs for pre-shift, meal-period and travel-time work ("the Off the Clock Claim"); (2) improperly calculating Plaintiffs' regular rate of pay ("the Regular Rate Claim"); (3) failing to pay overtime in a timely manner ("the Prompt Payment Claim"); and (4) improperly paying Plaintiffs at the straight time rate, rather than the overtime rate (of one-and-one-half times the regular rate of pay), in compensating overtime and compensatory time ("the Straight Time Claim"). Plaintiffs also request a finding that Defendants' conduct was willful and not in good faith, such that Plaintiffs are entitled to liquidated damages and a third year of recovery.

Defendants cross-move for summary judgment, arguing that (1) the Off the Clock Claim fails as a matter of law because Defendants lacked actual or constructive knowledge of any uncompensated work and because Plaintiffs failed to comply with Defendants' procedures for reporting overtime; (2) Plaintiffs are not entitled to liquidated damages because Defendants acted in good faith; and (3) the FLSA's statute of limitations should be limited to two years because Plaintiffs cannot show that Defendants willfully violated the law.

As explained below, summary judgment is granted in part and denied in part to Plaintiffs, and granted in part and denied in part to Defendants.

### A.    Off the Clock Claim

Plaintiffs' Off the Clock Claim asserts that Defendants violated the FLSA by failing to compensate Plaintiffs for compensable work -- pre-shift work, unpaid meal periods and travel-time work between jobsites.  Summary judgment is denied to Plaintiffs with respect to pre-shift and meal-period work performed by School-Based, MTF and Borough Command SSAs.  Summary judgment is granted to Plaintiffs with respect to travel-time work performed by School-Based, MTF and Borough Command SSAs.  Summary judgment is granted to Defendants as to pre-shift and meal-period work performed by Borough Command SSAs, and denied on all other aspects of the Off the Clock Claim.

"To establish liability under the FLSA for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); *see Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946).  An employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable.  *See* 29 U.S.C. § 211(c); *Caserta v. Home Lines Agency, Inc.,* 273 F.2d 943, 944, 946 (2d Cir. 1959) (rejecting as inconsistent with the FLSA an employer's contention that its employee was precluded from claiming overtime not shown on his own timesheets, because an employer "cannot . . . transfer his statutory burdens of accurate record keeping, and of appropriate payment, to the employee" (citation omitted)); *see also Holzapfel v. Town of Newburgh,* 145 F.3d 516, 524 (2d Cir. 1998).  "In other words, once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply

because the employee failed to properly record or claim his overtime hours." *Kuebel*, 643 F.3d at 363. Accordingly, where overtime records appear to be incomplete or inaccurate, to survive summary judgment, "an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference.'" *Id.* at 362 (alteration in the original) (quoting *Anderson*, 328 U.S. at 687). "[T]he fact that an employee is required to submit his own timesheets does not necessarily preclude him from invoking *Anderson's* ['just and reasonable inference'] standard." *Kuebel*, 643 F.3d at 363.

The Supreme Court in *Anderson* described a burden shifting framework in order for a plaintiff ultimately to prevail on a claim of uncompensated work when the employer's records of time worked are inadequate:

> In such a situation . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson*, 328 U.S. at 687-88; *accord Kuebel*, 643 F.3d at 362. Thus, a plaintiff is entitled to summary judgment unless defendant proffers evidence to rebut the plaintiff's evidence showing that he worked uncompensated time. *See Lynch v. City of New York*, 291 F. Supp. 3d 537, 550 (S.D.N.Y. 2018) ("Based upon the uncontroverted evidence, the Court concludes that plaintiffs worked minutes outside of their shifts for which they were uncompensated and they are entitled to summary judgment on this issue."); *Foster v. City of New York ("Foster/DLC")*, No. 14 Civ. 4142, Dkt. No. 153 at 37/83 (S.D.N.Y. Sep. 30, 2017) ("Although there is testimony that not all Plaintiffs were working every minute that they were clocked in to CityTime, and that some

remained on work premises without performing work, the Court finds that Plaintiffs have demonstrated as a matter of law that they performed uncompensated work during pre-shift, post-shift, and lunchtime hours.").

### 1. Uncompensated Work

Plaintiffs have proffered evidence that School-Based and MTF SSAs performed some amount of uncompensated pre-shift, meal-period and travel-time work as a matter of just and reasonable inference, and Defendants' arguments to the contrary fail as a matter of law. *See Kuebel*, 643 F.3d at 362.

At summary judgment, when an employer's records are inaccurate or inadequate, the employee's burden "is not high" in showing the amount and extent of uncompensated work at issue as a matter of just and reasonable inference. *Id.*; *see Anderson*, 328 U.S. at 687; *see also Sherald v. Embrace Techs., Inc.*, No. 11 Civ. 939, 2013 WL 126355, at *6 (S.D.N.Y. Jan. 10, 2013) (noting that "a defendant is not entitled to summary judgment . . . so long as a genuine issue of fact exists as to whether *some* uncompensated work was performed" (emphasis in original)).

 For uncompensated pre-shift work, Plaintiffs cite deposition testimony from numerous School-Based SSAs that they consistently arrived at school locations approximately ten to twenty minutes before their shifts to perform tasks such as opening logbooks, turning on security cameras, unlocking doors and setting up front desk or main desk areas.  Plaintiffs also submit testimony from all four MTF SSAs that they consistently picked up their vehicles approximately ten to fifteen minutes before their tour start time.  For uncompensated meal-period work, Plaintiffs cite deposition testimony from numerous School-Based SSAs and all four MTF SSAs that they were frequently required to respond to incidents during lunch and did not take full meal

breaks.  For uncompensated travel-time work, Plaintiffs cite deposition testimony from numerous School-Based SSAs and one MTF SSA that they worked scheduled overtime shifts at a second worksite following their normal shift during the relevant time period.

The *Anderson* "just and reasonable inference" standard applies because Defendants created no records showing the pre-shift, meal-period and travel-time work Plaintiffs claim they performed.  Specifically, Plaintiffs submit evidence that there are no records because SSAs were told they could not request overtime for pre-shift and meal-period work, were under the impression that, if requested, it would not be given or never received adequate training or instruction on how to request compensation for these specific types of work.  *See Furk v. Orange-Ulster BOCES*, No. 15 Civ. 6594, 2019 WL 4739140, at *7-8 (S.D.N.Y. Sept. 27, 2019) (concluding that plaintiff was entitled to the "just and reasonable inference" standard where she testified that she did not seek pre-approval to work during her meal period because, in part, it was apparent to her that any such request would be denied).  The same is true for travel-time work because the undisputed testimony is that Plaintiffs did not report this time because, as a policy, the NYPD does not pay SSAs for this type of work.

While Defendants cite testimony that School Based and MTF SSAs can receive and have received compensation for pre-shift work, and that there are minor inconsistencies in the way School Based and MTF SSAs take their unpaid meal period, this evidence does not rebut the evidence that Plaintiffs performed some uncompensated work (although the amount of that work remains to be shown).

Defendants also contend that Plaintiffs cannot establish, as a matter of law, that they performed uncompensated work by relying on their own deposition testimony, rather than on extrinsic evidence such as time-cards, punch cards or timesheets.  This argument is without

merit. *See Kuebel*, 643 F.3d at 362 ("It is well settled among the district courts of this Circuit . . . that it is possible for a plaintiff to meet [the *Anderson*] burden through estimates based on his own recollection."); *Lynch*, 291 F. Supp. 3d at 549-50 (concluding, as a matter of law, that plaintiffs had worked uncompensated overtime by relying, primarily, on plaintiffs' deposition testimony that they worked pre-shift, during meal times, and after work without being compensated). Accordingly, the undisputed evidence shows that School-Based and MTF SSAs performed some amount of uncompensated pre-shift, meal-period and travel-time work.

### 2. Supervisor Knowledge

Because a triable issue exists whether Defendants had actual or constructive knowledge that School-Based and MTF SSAs performed uncompensated pre-shift and meal-period work, summary judgment is denied to both Plaintiffs and Defendants on these claims. Summary judgment is granted to Plaintiffs, and denied to Defendants, as to Defendants' actual or constructive knowledge that School-Based and MTF SSAs performed uncompensated travel-time work.

To prevail on an off the clock claim, an employee must prove that his employer "had actual or constructive knowledge that he was performing uncompensated work." *Kuebel*, 643 F.3d at 365. Courts often rely on deposition testimony from employees themselves about what their supervisors knew regarding uncompensated overtime. *See, e.g., Perry v. City of New York*, No. 13 Civ. 1015, 2018 WL 1474401, at *6 (S.D.N.Y. Mar. 26, 2018) (relying, primarily, on deposition testimony from plaintiffs that supervisors were aware of uncompensated overtime work because they had observed plaintiffs perform it); *Foster/DLC*, No. 14 Civ. 4142, Dkt. No. 153 at 42-49/83 (relying, in part, on deposition testimony from plaintiffs about what supervisors observed and instructed them to do). When an employer has actual or constructive knowledge of

uncompensated overtime, it cannot deny compensation simply because the employee did not properly record or claim the overtime hours. *Kuebel*, 643 F.3d at 363.

### a. Uncompensated Pre-Shift Work

For knowledge of uncompensated pre-shift work performed by School-Based SSAs, Plaintiffs cite deposition testimony from numerous School-Based SSAs that supervisors witnessed SSAs' arrival and/or instructed them to arrive approximately ten to twenty minutes before their shifts to perform various tasks related to school security services. Numerous School-Based SSAs also testified that supervisors were aware of uncompensated pre-shift work because they reviewed and approved punch cards and timesheets, which show the time SSAs begin work. Additionally, some School-Based SSAs testified that they can be disciplined if pre-shift duties, such as setting up log books, are not completed by the start of their tour and that they were required to call their supervisors every day to report they were on duty before start time.

For knowledge of uncompensated pre-shift work performed by MTF SSAs, Plaintiffs cite deposition testimony from two MTF SSAs that their supervisors either witnessed or were aware that SSAs retrieved their vehicles approximately ten to fifteen minutes before their tour start time and from one MTF SSA that supervisors specifically directed her to perform this pre-shift work. Additionally, SSA Level Threes review and approve the punch cards and timesheets for all SSAs, which show start and end work times, a fact that strengthens Plaintiffs' argument regarding Defendants' knowledge with respect to uncompensated pre-shift and meal-period work for both School-Based and MTF SSAs.

Defendants cite deposition testimony from various School-Based SSAs that SSA Level Threes were sometimes located at different schools, or were located at the same school but either arrived at a different time or worked on a different tour and were accordingly unaware of pre-

shift work. Defendants also cite deposition testimony from one MTF SSA that she previously submitted and was paid for unscheduled overtime for pre-shift work, and one MTF SSA who never submitted overtime requests for pre-shift work.

The evidence as a whole creates a triable issue of fact as to whether Defendants were aware that School-Based and MTF SSAs performed uncompensated pre-shift work.

### b. Uncompensated Meal-Period Work

For knowledge of uncompensated meal-period work performed by School-Based SSAs, Plaintiffs submit deposition testimony from numerous School-Based SSAs that SSA Level Threes were aware of this work because they reported to SSA Level Threes via radio during meal periods, and often responded to incidents *with* SSA Level Threes during this time. Additionally, numerous School-Based SSAs testified that, if they are late to punch back in after responding to an incident during lunch, SSA Level Threes are required to sign the SSA's punch cards to indicate that there was a reason the SSA did not punch back in within the thirty-minute time period. Numerous School-Based SSAs also testified more generally that, when they are unable to take their full meal break because of having to respond to an incident, but are still able to clock back in within the thirty-minute time limit, SSA Level Threes review the relevant punch cards.

For knowledge of uncompensated meal-period work performed by MTF SSAs, Plaintiffs cite deposition testimony from two MTF SSAs that they respond to incidents during meal-periods alongside SSA Level Threes; from one MTF SSA that SSA Level Threes directed her to respond to incidents during her meal break; from one MTF SSA that she informs SSA Level Threes when she is not able to take a meal break; and from one MTF SSA that she was instructed by SSA Level Threes to keep her radio on during her meal break.

Finally, Plaintiffs submit deposition testimony from Tarvasha Huggins, Deputy Director of Field Operations at the SSD, that all SSAs are required to notify SSA Level Threes via radio when going on break, that radios operate on an in-house channel and everyone in a school can hear and that NYPD policies require all emergencies to be announced on the radio. This testimony further strengthens Plaintiffs' argument that Defendants knew of uncompensated meal-period work for both School-Based and MTF SSAs.

Similar to their opposition to knowledge of pre-shift work, Defendants note testimony from various School-Based SSAs that SSA Level Threes were unaware of meal-period work because they were sometimes located at a different school, or located at the same school but either arrived at a different time or worked on a different tour. Defendants also cite testimony from two MTF SSAs that they do not have pre-determined meal periods and eat at different times on any given day, and from two MTF SSAs that they do not punch their time cards in or out during their meal period. Defendants also cite testimony from Ms. Huggins that SSAs at larger schools are required to inform SSA Level Threes via radio that they are taking a meal break and are unavailable for assignment.

The evidence as a whole creates a triable issue of fact that Defendants were aware that School-Based and MTF SSAs performed uncompensated meal-period work.

### c. Uncompensated Travel-Time Work

For knowledge of uncompensated travel-time work performed by both School Based and MTF SSAs, Plaintiffs submit deposition testimony from Ms. Huggins that SSAs who travel to another school for an overtime shift are required to punch out at the school where the workday began and punch back in at the second location, and that SSAs are not paid for time traveling between schools. Plaintiffs also cite testimony of Yvette Perkins, an Administrative Staff

Analyst for the NYPD, that SSAs do not fill out the travel-time portion of overtime slips as travel time is inapplicable to SSAs. Plaintiffs also submit deposition testimony from School-Based SSAs that, when they travel to a second work location for an authorized shift, they do not have time for personal activities.

Because Defendants have not submitted conflicting evidence, Plaintiffs' evidence is sufficient to establish, as a matter of law, that Defendants were aware that School-Based and MTF SSAs performed uncompensated travel-time work.

### d. Defendants' Arguments

Defendants make two primary arguments in support of their motion for summary judgment on Plaintiffs' Off the Clock Claim. Both are without merit.

First, Defendants argue, as a matter of law, that they cannot have actual or constructive knowledge of pre-shift, meal-period or travel-time work that was not reported pursuant to the City's procedures for tracking overtime. Defendants rely on precedent from other Circuits where recovery was denied to an employee who failed to identify time worked using a timekeeping system specifically established by the employer for that purpose. Similarly, Defendants argue that Plaintiffs were familiar with the procedure for requesting overtime and were legally obligated to put Defendants on notice that they performed uncompensated work.

This proposition is directly contrary to Second Circuit precedent "that an employer's duty under the FLSA to maintain accurate records of its employees' hours is *non-delegable*," *Kuebel*, 643 F.3d at 363 (emphasis added), and that an employer must instead take active steps to "prevent" the performance of uncompensated work. *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008). Based on this precedent, Defendants' arguments have been expressly rejected by multiple courts within this Circuit regarding overtime claims by City employees who

did not record some of their time in CityTime. *See Lynch,* 291 F. Supp. 3d at 550; *Perry*, 2018 WL 1474401, at *6; *Foster/DLC*, No. 14 Civ. 4142, Dkt. No. 153 at 39-40/83; *Perez v. City of New York*, No. 12 Civ. 4914, 2017 WL 4326105, at *13 (S.D.N.Y. Sept. 27, 2017). The argument also fails here, especially in light of testimony from numerous SSAs that SSA Level Threes either witnessed or instructed them to perform pre-shift and meal-period work, and the fact that SSA Level Threes were responsible for reviewing and approving their punch cards and timesheets at the end of each week. *See Lynch,* 291 F. Supp. 3d at 550. It makes no sense that an employer could tacitly approve employees' failure to record overtime work, and as a result be excused from compensating employees for that work. *See Chao*, 514 F.3d at 287-88 (concluding that defendant's knowledge of uncompensated overtime was sufficient to afford it the opportunity to comply with the FLSA, where the information that plaintiffs regularly worked overtime was communicated to defendants on plaintiffs' time sheets); *accord Lynch*, 291 F. Supp. 3d at 550 (rejecting defendant's argument that it lacked knowledge of uncompensated work because plaintiffs failed to use CityTime to request overtime, where supervisors were able to view CityTime data and were responsible each week for approving timesheets).

Defendants further argue that Plaintiffs cannot, absent extrinsic evidence such as time cards, punch cards or timesheets, rely on their own deposition testimony regarding Defendants' knowledge to defeat Defendants' summary judgment motion. This argument too is without merit, as courts frequently rely on deposition testimony from employees about what their supervisors knew regarding uncompensated overtime. *See Lynch*, 291 F. Supp. 3d at 542-44 (granting summary judgment for plaintiffs on the issue of supervisor knowledge based, in part, on testimony from plaintiffs regarding what supervisors observed based on physical proximity and what supervisors instructed plaintiffs to do); *Perry*, 2018 WL 1474401, at *6 (relying,

primarily, on deposition testimony from plaintiffs that supervisors were aware of uncompensated overtime work because they had observed plaintiffs perform it); *Foster/DLC*, No. 14 Civ. 4142, Dkt. No. 153 at 38/83 (relying, in part, on deposition testimony from plaintiffs that supervisors observed plaintiffs performing pre-shift work, during unpaid meal periods and after their shifts).[2]

### e. Borough Command SSAs

While Plaintiffs include Borough Command SSAs within the Phase I grouping and submit evidence regarding their responsibilities and job duties, the evidence cited by Plaintiffs regarding Borough Command SSAs' performance of uncompensated work is sparse. Even if Plaintiffs could establish that Borough Command SSAs performed uncompensated pre-shift and meal-period work, because of the lack of evidence that SSA Level Threes were aware of this work, no reasonable jury could find supervisor knowledge of these types of work. Therefore Defendants' motion is granted as to these claims. However, Plaintiffs have submitted evidence that Borough Command SSAs performed travel-time work with Defendants' knowledge, and Defendants have not cited conflicting evidence on this part of the claim. Accordingly, Plaintiffs' motion is granted as to travel-time work performed by Borough Command SSAs.

---

[2] In their opposition to Plaintiffs' motion for summary judgment, Defendants also argue that Plaintiffs' testimony about what their supervisors witnessed or knew is inadmissible and therefore cannot be considered when ruling on a motion for summary judgment. This argument is unpersuasive as a plaintiff's testimony about what they saw a supervisor do or observe, as evidence of the supervisor's knowledge, is not hearsay because it is not an out-of-court statement. *See* Fed. R. Evid. 801(c). To the extent a supervisor's out-of-court statement about his or her knowledge is offered for the truth, the statement is likely admissible as an opposing party's statement. *See* Fed. R. Evid. 801(d)(2)(A). That the deposition transcripts containing Plaintiffs' testimony are themselves hearsay is not an impediment on a motion for summary judgment, assuming that Plaintiffs are available to testify at trial. *See GE Funding Capital Mkt. Servs., Inc. v. Neb. Inv. Fin. Auth.*, No. 15 Civ. 1069, 2017 WL 2880555, at *3 (S.D.N.Y. July 6, 2017), *aff'd*, 767 F. App'x 110 (2d Cir. 2019) ("Hearing evidence is admissible at the summary judgment stage if the contends would or could otherwise be admissible at trial." (alteration omitted)).

**B.     Regular Rate Claim**

Summary judgment is granted to Plaintiffs on all three parts of their Regular Rate Claim, which asserts that Defendants improperly calculated Plaintiffs' regular rate of pay in determining their overtime compensation.

The FLSA requires that employees be compensated for all hours worked over forty during each workweek "at a rate not less than one and one-half times the *regular rate* at which [they are] employed."  29 U.S.C. 207(a)(1) (emphasis added).  Regular rate of pay is thus the basis for determining the rate of overtime pay.

Plaintiffs claim that Defendants miscalculated the regular rate of pay in three ways -- first, by dividing their annual salary by the *assumed* days and hours in a year, instead of dividing their weekly salary by *actual* hours worked in a workweek, in violation of 29 C.F.R. § 778.109, which requires that "it is necessary to compute the regular hourly rate of such employees during *each workweek*" (emphasis added); second, by failing to include meal allowances in the calculation of regular rate of pay; and third, by failing to include night-shift differentials in the calculation of regular rate of pay.  Plaintiffs rely on the declarations of their expert Louis R. Lanier in support of their Regular Rate, Prompt Payment and Straight Time Claims.  Plaintiffs retained Dr. Lanier to determine the amount of unpaid overtime due to Plaintiffs based on payroll and CityTime data.  Defendants challenge the first two of Plaintiffs' theories for their Regular Rate Claim solely on the basis that Dr. Lanier's declarations should be disregarded.  Summary judgment is granted to Plaintiffs on these two theories because the Lanier declarations are properly before the Court.

Defendants identified various ways that the first Lanier declaration failed to comply with Federal Rule of Evidence 702.  Plaintiffs cured these deficiencies in a supplemental Lanier

declaration. Defendants then sought to strike the second Lanier declaration on the ground that it exceeded the number of exhibits permitted by the Court's Individual Rules. Plaintiffs perhaps should have sought permission or at least clarification to file additional exhibits, or in the first instance should have included, as an exhibit, excerpts from Lanier's four expert reports or deposition testimony and then included the complete reports and deposition transcript pursuant to the Court's Individual Rules. Nevertheless, the Second Circuit has a strong preference for resolving issues and claims on their merits rather than on procedural technicalities. *See Rodriguez v. Vil. Green Realty, Inc*., 788 F.3d 31, 47 (2d Cir. 2015).

Defendants are not prejudiced by the Court's considering Dr. Lanier's supplemental declaration. Each of his four expert reports was produced to Defendants during discovery; Defendants deposed Dr. Lanier; Defendants hired their own expert to review and respond to Dr. Lanier's analysis, and neither Defendants themselves nor their expert addressed the merits of the first two issues above -- the use of assumed rather than actual hours, and the exclusion of meal allowances. Accordingly, Defendants' application to strike both Lanier declarations is denied, and summary judgment is granted to Plaintiffs on the first two theories of their Regular Rate Claim, as Defendants' only argument in opposition is based on their challenge to the Lanier declarations.

Plaintiffs also are granted summary judgment on the third theory of their Regular Rate Claim related to Defendants' failure to include night-shift differentials in the calculation of the FLSA regular rate of pay. The parties do not appear to dispute that "[t]he Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials." 29 C.F.R. § 778.207(b). Dr. Lanier opines that Plaintiffs are collectively owed $55,156 in back pay damages for all three portions of their Regular Rate Claim, but does not break out the amount for the

improper exclusion of night differentials. Defendants' expert contends that Plaintiffs were paid $1,006,641 in night-shift differential payments during the relevant period, but he does not challenge Plaintiffs' assertion that, in some number of cases, Defendants improperly excluded these payments from the *calculation* of regular rate of pay. Accordingly, Plaintiffs are granted summary judgment on the night-shift differential portion of the Regular Rate Claim as well, with the resulting amount of damages still to be determined.

### C.        Prompt Payment Claim

Summary judgment is denied on Plaintiffs' Prompt Payment Claim because a triable issue exists as to the cause of the improper delay. "While the statutory language of the FLSA does not prescribe any particular payment schedule, courts have consistently interpreted Section 206(a) of the statute to include a prompt payment requirement." *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 353 (S.D.N.Y. 2014); *see Rogers v. City of Troy, N.Y.,* 148 F.3d 52, 57 (2d Cir. 1998) ("[I]t is clear that the FLSA requires wages to be paid in a timely fashion."); *see also* 29 U.S.C. § 206(a). Overtime payments "may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made." 29 C.F.R. § 778.106.[3]

---

[3] Because § 778.106 is an interpretative bulletin, it does not command formal deference from this Court. *See Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977); *see also Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir. 1995); *Reich v. Interstate Brands Corp.*, 57 F.3d 574, 577 (7th Cir. 1995). Nevertheless, the Secretary's interpretations have the "power to persuade, if lacking power to control," as they "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *accord Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 114 (2d Cir. 2015).

Plaintiffs proffer evidence from Dr. Lanier that, on 19,137 occasions, they were paid more than thirty-five days after working unscheduled overtime. Plaintiffs also cite deposition testimony from numerous SSAs that, after paperwork was timely submitted at the end of the week, compensation for unscheduled overtime was often delayed well past the next pay period because Defendants required multiple levels of supervisory review. In response, Defendants argue that during the relevant time period, overtime cash payments were received within thirty-five days of the date they were earned 97.9% of the time, raising a triable issue of fact as to whether Defendants were responsible for the late payments, or whether Plaintiffs' mistakes in recording and submitting the requisite forms caused delays on a few isolated occasions. *See Lynch*, 291 F. Supp. 3d at 552. Because of the conflicting evidence, summary judgment is denied on the Prompt Payment Claim.

### D.     Straight Time Claim

Summary judgment is granted to Plaintiffs' on their Straight Time Claim -- that Defendants improperly paid Plaintiffs at the straight time rate, rather than at the proper rate of one-and-one-half times the regular rate of pay, in compensating overtime and compensatory time. The FLSA requires that compensation for hours worked in excess of forty hours per week be paid at "a rate not less than one and one-half times" the regular rate. 29 U.S.C. § 207(a)(1). Similarly, the FLSA provides that employees working in the public sector receive compensation for compensatory time off "at a rate of not less than one and one-half hours for each hour of [overtime work]" under certain circumstances. 29 U.S.C. § 207(o)(1).

Plaintiffs proffer evidence from Dr. Lanier that the City paid for overtime work and compensatory time off at the straight time rate, rather than the proper rate of one-and-one-half, resulting in an underpayment over three years of $1,522. Defendants do not cite any contrary

evidence, but instead challenge only the admissibility of the Lanier declarations. For the reasons discussed above, the Lanier declarations are properly considered on these motions. As there is no disputed issue of fact, summary judgment is granted to Plaintiffs on the Straight Time Claim.

**E.      Defendants' State of Mind -- Statute of Limitations and Liquidated Damages**

Both Plaintiffs and Defendants seek summary judgment on the issue of whether Defendants' conduct was willful, such that plaintiffs are entitled to three rather than two years of recovery. Relatedly, both Plaintiffs and Defendants seek summary judgment on the issue of liquidated damages based on the issue of whether the City acted in good faith to comply with the FLSA. The motions are denied because a triable issue of fact exists as to Defendants' state of mind.

While the FLSA has a two-year statute of limitations, upon a showing that the defendant's violation was "willful," the limitations can be extended to three years. 29 U.S.C. § 255(a). To prove a willful violation within the meaning of § 255(a), an employee must establish that the employer either knew or showed reckless disregard for whether its conduct was prohibited by the statute. *Kuebel*, 643 F.3d at 366; *accord Lynch*, 291 F. Supp. 3d at 553. "When a defendant is on notice of its unlawful practices, but nevertheless continues them, willfulness may be found." *Lynch*, 291 F. Supp. 3d at 549.

The FLSA generally requires a district court to award a plaintiff liquidated damages equal in amount to actual damages. 29 U.S.C. § 216(b). A district court has discretion to deny liquidated damages where the employer shows that it acted in subjective good faith with objective reasonable grounds for believing that its acts or omissions did not violate the FLSA. *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008); *accord Garcia v. Saigon Mkt. LLC*, No. 15 Civ. 9433, 2019 WL 4640260, at *11 (S.D.N.Y. Sept. 24,

2019).  An employer can meet its burden of establishing subjective good faith by showing that it took "active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." *Barfield*, 537 F.3d at 150; *accord Garcia*, 2019 WL 4640260, at \*11.  "An employer's actions are objectively unreasonable when it knows of the FLSA's requirements but does not take steps to comply with them."  *Lynch*, 291 F. Supp. 3d at 548 (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142-43 (2d Cir. 1999)).

Defendants proffer evidence of many measures they have taken to comply with the FLSA -- particularly as to compensable work and overtime compensation -- to show that any violations were not willful or reckless.  Plaintiffs, in contrast, point to twelve prior wage and hour lawsuits against Defendants, including at least one including off the clock and overtime claims, thereby putting Defendants on notice of their allegedly unlawful practices.  Plaintiffs also introduce evidence showing how Defendants' remedial measures were inadequate to ensure compliance with the FLSA.  This conflicting evidence creates a triable issue of fact as to willfulness and good faith.  Summary judgment on these issues is therefore denied to both parties.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgement is GRANTED as to the Off the Clock Claim regarding pre-shift and meal-period work performed by Borough Command SSAs, and DENIED on all other claims.  Plaintiffs' motion for summary judgment is GRANTED on (1) the Off the Clock Claim, with respect to travel-time work performed by School-Based, MTF and Borough Command SSAs; (2) the Regular Rate Claim; and (3) the Straight Time Claim.  Plaintiffs' motion for summary judgment is DENIED on (1) the Off the Clock Claim with respect to pre-shift and meal-period work performed by School-Based and MTF SSAs; (2) the Prompt Payment Claim; and (3) on Defendants' willfulness and good faith.

For clarity, the following claims remain: (1) the travel-time portion of the Off the Clock Claim for the School-Based, MTF SSAs and Borough Command SSAs (liability established, damages to be determined); (2) the pre-shift and meal-period portions of the Off the Clock Claim for the School-Based and MTF SSAs (liability and damages to be determined); (3) the Prompt Payment Claim (liability and damages to be determined); (4) Regular Rate Claim (liability established, damages to be determined); (5) the Straight Time Claim (liability established, damages to be determined). Also remaining are the issues of (a) whether Plaintiffs are entitled to liquidated damages; and (b) whether the statute of limitations extends to three years.

Dated: February 12, 2020
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE