USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/26/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
RHAKEEMA WORLEY, et al.,
                           Plaintiffs,

          -against-

CITY OF NEW YORK, et al.,
                           Defendants.
------------------------------------------------------------ X

17 Civ. 4337 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Plaintiffs -- 3,879 current and former School Safety Agents ("SSAs"), employed by the New York City Police Department's ("NYPD") School Safety Division ("SSD") -- bring this action against the City of New York (the "City") and the NYPD for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a) *et seq*. This Opinion and Order addresses Plaintiffs' motion under 29 U.S.C. § 216(b) for final certification of a collective under the FLSA. For the following reasons, Plaintiffs' motion is granted.

## I. BACKGROUND

The facts below are undisputed unless otherwise noted.

### A. Facts Relevant to All SSAs

Plaintiffs[1] are current or former SSAs who worked within the SSD of the NYPD at some point since June 8, 2014, in the role of SSA Level One. Plaintiffs work as SSAs in one of three

---

[1] Pursuant to a so-ordered stipulation, the parties agreed to focus discovery and their summary judgment motions on 103 randomly selected Opt-In Plaintiffs, in addition to the twelve named Plaintiffs, collectively designated the "Phase I Plaintiffs." (Dkt. No. 98). During discovery, Defendants deposed fifty-one Phase I Plaintiffs -- forty-four School-Based SSAs, four MTF SSAs and five Borough Command SSAs (as these terms are defined in the text above), with three SSAs having worked in more than one role during the relevant time. While Defendants note that four SSAs served as both Level Ones and SSA Level Threes (which are Level One supervisors) during the applicable period, these SSAs seek damages only for the time served as Level Ones. (Dkt. No. 192 at 12/38 n.3).

roles: (1) providing security services at New York City Schools ("School-Based SSAs"); (2) providing security services by vehicle within a particular borough as part of a Mobile Task Force ("MTF SSAs"); and (3) performing office work at Borough Command offices ("Borough Command SSAs"). Plaintiffs allege that Defendants failed to compensate SSAs for performing uncompensated pre-shift, meal-period and travel-time work ("the Off the Clock Claim").

All SSAs effectuate the SSD's mission of providing safe school environments for students and faculty. All SSAs attend NYPD Training Academy, where they receive the School Safety Agent Student Guide, which governs their conduct and provides instructions related to their duties. Tarvasha Huggins, Deputy Director of Field Operations at the SSD, testified that, while performance measures may be "a little different" depending on the specialty unit, all SSAs are subject to the same measures regardless of their assignment or building and that the general rules for remaining at a post assignment apply to all SSAs.

While Defendants argue otherwise, the evidence in the record supports that all SSAs, regardless of assignment, follow the same timekeeping and overtime policies; they generally work forty hours per week in eight-and-a-half hour shifts, and have thirty minutes automatically deducted for a meal period; one pay period consists of fourteen days; and all SSAs follow the same process for submitting punch cards and time sheets, including for overtime compensation. Defendants' policies require that authorized overtime be entered into "CityTime," the City's timekeeping and payroll system. All SSAs are classified within CityTime as a "pay-to-schedule" job title, meaning that they are paid only for their regularly scheduled shifts unless a timekeeper affirmatively inputs overtime. Regardless of whether overtime is "scheduled" or "unscheduled," all SSAs are compensated only for overtime that has been authorized by their supervisors and inputted into CityTime. Plaintiffs assert that, by policy, the City does not compensate SSAs for

2

pre-shift, meal period and travel-time overtime work. Defendants maintain that Plaintiffs are paid for both scheduled and unscheduled overtime, which can include these types of work, and that Plaintiffs have previously submitted unscheduled overtime for pre-shift work.

  **B.**  **School-Based SSAs**

  According to the NYPD School Safety Agent Duties and Responsibilities Guide and School Safety Agent Student Guide, all School-Based SSAs are evaluated based on the same set of tasks and standards by their immediate supervisor, must abide by the same general rules while on post assignments and share similar roles and responsibilities.

  The deposition testimony from both Ms. Huggins and School-Based SSAs is that they carry out similar duties and responsibilities. These include: appearing at a specific school location and time, ready for post assignment; setting up security services before a school opens to students; regulating the flow of students; maintaining order inside the school; checking student IDs; regulating visitors to schools; and monitoring the outer school perimeter for unauthorized individuals. The evidence also shows that all School-Based SSAs are generally assigned to main entrance duty, front desk duty, patrol duty and/or cafeteria duty during a given shift, and that all School-Based SSAs must be prepared to perform the following tasks, regardless of post assignment: de-escalating conflicts between students; reporting possible child abuse; performing building sweeps for intruders; monitoring radios during meal periods; and reporting meal and rest breaks to supervisors via radio, among other tasks.

  **C.**  **MTF SSAs**

  According to the School Safety Agent Student Guide, MTF SSAs share similar roles and responsibilities. Until 2015, MTF SSAs were designated as "SSA Level 2," but their job duties and responsibilities were the same as they are now. Ms. Huggins and MTF SSAs testified that

3

MTF SSAs have similar duties. These include: appearing at a specific location and time, ready for post assignment; inspecting vehicles at the beginning and end of tours of duty; immediately responding to emergency incidents within the assigned borough; scanning school sites for gang related activity, among other responsibilities.

### D. Borough Command SSAs

Ms. Huggins testified that, when SSA Level Ones are assigned to the Borough Command, they may be assigned to perform administrative work at Borough Command locations, or may be assigned to other specialized units, such as field intelligence, community outreach and crime prevention, where SSAs do not primarily perform administrative work. Plaintiffs contend that testimony from Borough Command SSAs shows they all perform similar office work for the Borough Command.

## II. LEGAL PRINCIPLES

Section 216(b) of the FLSA authorizes employees to maintain collective actions if they are "similarly situated" with respect to those alleged violations. 29 U.S.C. § 216(b); *see Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). The Second Circuit has endorsed a two-step framework to assess whether to certify a FLSA collective action. *Myers*, 624 F.3d at 554-55. Step one -- conditional certification -- requires plaintiffs to "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id*. at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)).

At step two, final certification -- the current stage of this case -- "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named

4

plaintiffs." *Myers*, 624 F.3d at 555. Plaintiffs bear the "burden of establishing that she and other employees are similarly situated," *LoCurto v. AT&T Mobility Servs. LLC*, No. 13 Civ. 4303, 2018 WL 4519201, at *3 (S.D.N.Y. Sept. 20, 2018), and, although the standard is higher than conditional certification, "the 'similarly situated' requirement of 29 U.S.C. §216(b) is considerably less stringent than the requirement of Fed. R. Civ. P. 23(b)(3) that common questions 'predominate.'" *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160, 2016 WL 3221148, at *7 (S.D.N.Y. June 9, 2016).

Courts in the Second Circuit consider three factors to determine whether plaintiffs are "similarly situated" under § 216(b): "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective action treatment]." *LoCurto*, 2018 WL 4519201, at *3. When plaintiffs are part of a large collective, "[they] need not present evidence for each and every opt-in Plaintiff so long as they can show that Defendants engaged in a policy, plan, or scheme of FLSA violations." *Lynch v. City of New York*, No. 16 Civ. 5677, 2017 WL 4877425, at *3 (S.D.N.Y. Oct. 27, 2017) (internal quotation marks omitted). "All that is required is a *persuasive showing* that the original and opt-in plaintiffs were common victims of a FLSA violation pursuant to a systematically-applied company policy or practice such that there exist common questions of law and fact that justify representational litigation." *Id.* (emphasis added).

If the district court determines that all members of the collective are similarly situated, the collective action is certified and the matter proceeds to trial. *See LoCurto*, 2018 WL 4519201, at *3. However, if the record reveals opt-in plaintiffs are not similarly situated, the action may be "de-certified" and the opt-in plaintiffs' claims may be dismissed without

5

prejudice. *Myers*, 624 F.3d at 555. Alternatively, "the case may be divided, if appropriate, into subgroups."[2] *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 300 (S.D.N.Y. 2015).

## III. DISCUSSION

The Complaint asserts four FLSA claims -- the Off the Clock, Regular Rate, Prompt Payment and Straight Time Claims. Each of the four claims is asserted as to the three types of SSAs -- the School-Based, MTF and Borough Command SSAs.[3] Following the parties' summary judgment motions, all of the claims remain and are the subject of this motion for collective certification except the portion of the Off the Clock Claim regarding pre-shift and meal-period work performed by Borough Command SSAs. Plaintiffs propose that the collective be separated into three subgroups for final certification purposes and contend that SSAs within each subgroup -- School-Based, MTF and Borough Command SSAs -- are similarly situated as to all four claims.

Defendants, in their opposition to the motion for collective certification, address only whether Plaintiffs are similarly situated with respect to the Off the Clock Claim. Plaintiffs' motion is therefore granted as to the Regular Rate, Prompt Payment and Straight Time Claims. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a

---

[2] Defendants contend that the proposed collective, as a whole, is *de facto* dissimilar because it is composed of three subgroups. This argument is mooted in light of Plaintiffs' proposed subgroups and is without merit given a district court's discretion to divide a collective into subgroups, if appropriate. *See Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 300 (S.D.N.Y. 2015).
[3] The Off the Clock Claim asserts that Defendants failed to compensate Plaintiffs for overtime work performed before shifts, during meal periods and between school work sites; the Regular Rate Claim asserts that Defendants improperly calculated Plaintiffs' regular rate of pay; the Prompt Payment Claim asserts that Defendants failed to pay overtime in a timely manner; and the Straight Time Claim asserts that Defendants improperly paid Plaintiffs at the straight time rate, rather than the overtime rate (of one-and-one-half times the regular rate of pay), in compensating overtime and compensatory time.

court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

For the following reasons, Plaintiffs' motion is granted.

### A. Common Policy or Practice

As a threshold matter, the parties dispute whether Defendants have a common policy or practice, and in turn whether Plaintiffs are required to present evidence for every opt-in Plaintiff regarding supervisor knowledge of the allegedly uncompensated work. *See Lynch*, 2017 WL 4877425, at *3 ("Plaintiffs need not present evidence for 'each and every' opt-in Plaintiff so long as they can show that Defendants engaged in a policy, plan, or scheme of FLSA violations."). Plaintiffs contend that all SSAs are common victims of Defendants' policy of not compensating SSAs for pre-shift, meal-period and travel-time unscheduled overtime work, despite knowledge that the work occurred. Defendants argue that Plaintiffs cannot demonstrate that they were victims of a common policy or practice because Defendants' timekeeping and overtime policies are lawful, and the alleged common policy and practice is not supported by record evidence.

All SSAs are subject to the same rules and policies for timekeeping and overtime, including rules requiring all overtime to be authorized and reviewed by multiple levels of supervisors. Plaintiffs challenge only a few, specifically defined policies and practices they claim apply to all SSAs, namely that SSAs ordinarily are not compensated for pre-shift, meal-period and travel-time unscheduled overtime work. Plaintiffs claim that Defendants violated these policies and practices in similar ways as to all SSAs and do not concede that these policies are lawful. Further, Plaintiffs allege that all SSAs perform similar types of uncompensated work; share the same underlying job mission; report to a similar level of supervisor; work similar length shifts; have an uncompensated meal period; receive similar training and are subject to

7

very similar performance measures. These facts persuasively show that the Off the Clock Claim arises out of a common policy and practice, such that an inquiry into each supervisor's knowledge regarding the allegedly uncompensated overtime is not necessary.

Courts in this district have identified a common policy or practice in similar circumstances. *See Perry v. City of New York*, No. 13 Civ. 1015, 2019 WL 1146581, at *6-10 (S.D.N.Y. Mar. 13, 2019) (concluding that off the clock claims were based on a common policy, where a proposed collective of two subgroups was subject to the same CityTime time entry and overtime policies, and whose claims involved a few, specifically defined policies or practices); *Douglas v. Anthem Prods., LLC*, No. 18 Civ. 5789, 2019 WL 78988, at *2 (S.D.N.Y. Jan. 2, 2019) (certifying a collective composed of all hourly employees, including employees with different employment settings, where plaintiff submitted "ample evidence that Defendants' [overtime] policy" extended to all hourly employees); *see also Adams v. City of New York*, No. 16 Civ. 03445, 2019 WL 5722054, at *5-8 (S.D.N.Y. Aug. 29, 2019) (concluding the same where a collective composed of multiple levels of fraud investigators within the City's Human Resources Administration was subject to the same CityTime policies, and where plaintiffs shared the same underlying job mission, reported to the same level of supervisor, worked the same length of shift and did not concede defendants' policies were lawful).

Defendants rely primarily on *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011), for the proposition that as long as an employer's timekeeping system "allow[s] for the complete and accurate recording of all time worked," *id*. at 461, the system is lawful and Plaintiffs cannot claim they were subject to an unlawful common policy or practice. This argument is without merit. Unlike *Zivali*, Plaintiffs do not concede that Defendants' policies regarding timekeeping are lawful. Further, in concluding that the timekeeping system in *Zivali*

8

was lawful, the court relied, in part, on the fact that defendant allowed employees to obtain time adjustments when they performed overtime work and report it directly to supervisors, who then manually adjusted employees' time, subject to review by the employees themselves. *See id*. at 461. Also, defendant in *Zivali* had a policy mandating that all overtime, regardless of whether it was authorized in advance, be paid. *See id*. at 461-62. None of these facts are present here. Finally, in *Zivali*, where plaintiffs claimed, as here, to have performed work that was not captured the timekeeping system, defendant's system in *Zivali* allowed plaintiffs to utilize an "adjustment feature" to capture otherwise unreported time. *See id*. at 467. Here, CityTime does not provide Plaintiffs with this option.

### B. School-Based and MTF SSAs

In addition to the arguments addressed above, Defendants assert that the members of each subgroup are not similarly situated, in terms of factual and employment settings, the defenses available to Defendants and fairness and procedural considerations. These arguments are addressed below.

#### 1. Factual and Employment Settings

Official NYPD and SSD documents show that all School-Based SSAs are evaluated based on the same set of tasks and standards by their immediate supervisor, must abide by the same general rules while on post assignments and share similar roles and responsibilities. Plaintiffs cite testimony from Ms. Huggins that School-Based SSAs perform similar duties, and substantial testimony from School-Based SSAs regarding duties and responsibilities comprising the alleged uncompensated work. Plaintiffs also submit evidence that School-Based SSAs are assigned to similar duty stations during shifts, and must be prepared to perform a similar set of tasks, regardless of post assignment.

Substantially similar evidence exists for MTF SSAs.  Official NYPD and SSD documents state that MTF SSAs share similar roles and responsibilities.  Ms. Huggins testified that MTF SSAs perform similar duties, and MTF SSAs testified regarding duties and responsibilities for which they were not compensated.

Defendants contend that School-Based SSAs do not universally share similar factual and employment settings based on inconsistencies in deposition testimony.  Defendants make the same claim as to MTF SSAs.  For School-Based SSAs, Defendants cite testimony that School-Based SSAs at schools with scanning devices have more responsibilities than those at "non-scanning schools"; that some School-Based SSAs have different responsibilities depending on when their shifts start; that some School-Based SSAs do not perform pre-shift work and some, when they did, were compensated; that some schools staffed more School-Based SSAs than others, resulting in varying levels of duties; that meal period interruptions for School-Based SSAs are not consistent; that some School-Based SSAs do not work at the same location as their supervisor; and that some School-Based SSAs perform scheduled overtime at their assigned school, while some perform it at a different school.

As for MTF SSAs, Defendants cite testimony that some MTF SSAs are not required to pick up vehicles at or before their scheduled shift; that some MTF SSAs pick up and drop off vehicles in different locations, which are different distances from their work assignments; that particular employment settings affect how MTF SSAs record their arrival time and any interruptions during meal periods; and that MTF SSAs have, in fact, submitted and received compensation for overtime work.

Assuming that these factual assertions are true, they do not defeat collective certification. Section 216(b) requires that employees "need show only that their positions are similar, not

identical," *Perry*, 2019 WL 1146581, at *7, and the fact that Defendants have identified individualized issues within each subgroup does not, by itself, establish that they are not similarly situated. *See McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 367 (S.D.N.Y. 2014) ("Courts have found opt-in plaintiffs similarly situated in large off-the-clock cases despite the individualized issues such cases present.") (internal quotation mark omitted).

The requirement that opt-in plaintiffs be similarly situated is to ensure that representative litigation on behalf of a collective is sensible and workable. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (noting that Congress gave employees and their "representatives" the right to bring actions under the FLSA and that, following 1947 amendments, Congress left intact the "similarly situated" language providing for collective actions, at least in part, to enforce "[t]he broad remedial goal of the statute"). Most of the differing circumstances that Defendants cite relate to the issue of how much uncompensated work each SSA did compared with others in the same group. At trial, FLSA plaintiffs are permitted to prove their hours worked by representative sample, when defendant has not kept adequate records. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045-49 (2016). Therefore, the differences cited by Defendants are immaterial. In *Tyson*, workers were required to wear protective gear, but the particular type of gear and time required to put it on differed according to the worker's assignment each day. *Id*. at 1042. Plaintiffs brought off the clock claims for the uncompensated time spent "donning and doffing" work attire. *Id*. The FLSA claims were brought on behalf of a collective, and the parallel state law claims were brought on behalf of a class certified under Rule 23 of the Federal Rules of Civil Procedure. *Id*. The Supreme Court affirmed the appellate and trial courts and held that plaintiffs were entitled to use a representative sample to prove the average amount of time they spent donning and doffing and

for which they should have been paid, particularly where defendants had not kept adequate records of time worked. *Id*. at 1046-48. Although the focus of the opinion was on Rule 23 class certification, *Tyson* is instructive in the FLSA context as well, particularly because the commonality requirement is more rigorous under Rule 23 than it is under the FLSA.

Defendants' arguments suggest that an individual inquiry into each opt-in Plaintiff is required because Plaintiffs have not made a persuasive showing of a common policy or practice. However, the opposite is true; because Plaintiffs have made a sufficient showing as to a common policy or practice, the individual differences cited by Defendants do not defeat certification of the collective.

### 2. Defenses Available to Defendants

Defendants argue that the compensability of the work identified in the Off the Clock Claim is individualized, highly fact-specific and subject to individual defenses. Defendants cite SSA testimony that some SSAs did not work at the same location or on the same tour as their supervisor; that some SSAs did not actually perform pre-shift work; that some SSAs performed pre-shift work and received compensation, while others testified that they did not request payment for similar work; that some supervisors allowed SSAs to take meal periods later in the day or leave early when they missed the break initially; and that some SSAs did not use punch cards to document their meal periods. As discussed above, where Plaintiffs have established a common policy and practice, the standard of proof and required evidence under FLSA is not an individualized inquiry. *See Alonso v. Uncle Jack's Steakhouse, Inc.*, No. 08 Civ. 7813, 2011 WL 4389636, at *3 (S.D.N.Y. Sept. 21, 2011) (concluding that "individual differences" in the proposed collective did not warrant decertification as long as plaintiffs could show they were

subject to a "single decision, policy, or plan"). Accordingly, this factor also weighs in favor of a finding that School-Based and MTF SSAs are respectively similarly situated.

### 3. Fairness and Procedural Considerations

In reviewing fairness and procedural considerations in the context of final certification, district courts "consider whether a collective action would lower costs to the plaintiffs through the pooling of resources, efficiently resolve common issues of law and fact, and coherently manage the class in a manner that will not prejudice any party." *Perry*, 2019 WL 1146581, at *8; *see Hoffmann-La Roche Inc.*, 493 U.S. at 170 (noting that the remedial nature of a collective action allows plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources," and allows the judicial system to benefit by "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [violation]"). Defendants do not address fairness and procedural considerations in their motion papers. As noted by Plaintiffs, the collective comprises 3,879 individual plaintiffs, the majority of whom are members of the School-Based and MTF SSA subgroups. The costs of a collective action involving these two subgroups would be significantly lower than thousands of individualized trials. *Perry*, 2019 WL 1146581, at *8 (noting, in considering certification of a subgroup within a collective, that "[a]lmost all of the 2,576 Plaintiffs in this case are [within the subgroup] and that "the cost of a collective action would surely be lower than the combined cost of individual trials"). If Plaintiffs were allowed to proceed in subgroups and use representative evidence regarding the amount of uncompensated work performed by each subgroup, the trier of fact would be better positioned to resolve common questions of fact. *See id*. In short, the policy objectives of reducing costs to Plaintiffs, and conserving judicial resources, would be best served by granting final certification.

For the reasons discussed above, the Court finds that School-Based SSAs and MTF SSAs are similarly situated, respectively, with regard to the Off the Clock Claim.

C.     **Borough Command SSAs**

The only portion of the Off the Clock Claim brought by the Borough Command SSAs to survive summary judgment is the uncompensated travel-time work portion. Even though the factual and employment settings factor weighs against collective certification, Borough Command SSAs are sufficiently similarly situated to warrant certification of a collective for purposes of this claim.

1. **Factual and Employment Settings**

The factual and employment settings of the Borough Command SSAs is somewhat dissimilar, a factor that weighs against collective certification of the sub-group. Plaintiffs argue that the role and responsibilities of all Borough Command SSAs is to perform office work, and that all Borough Command SSAs carry out similar job duties. As noted earlier, Ms. Huggins testified that Borough Command SSAs can be assigned to administrative units where they answer phones, take attendance, input data and file paperwork. However, she also testified that Borough Command SSAs can also be assigned to different units such as field intelligence, community outreach, and crime prevention where they do not, primarily, perform administrative duties. Defendants cite additional testimony showing that Borough Command SSAs are not similarly situated. This evidence undercuts the claim that all Borough Command SSAs are similarly situated as to their factual and employment settings.

Unlike School-Based and MTF SSAs, Plaintiffs have not cited documents that Borough Command SSAs are evaluated based on the same set of tasks and standards by their immediate supervisors, that they must abide by the same general rules while on post assignments. Even

14

though § 216(b) provides that employees "need only show that their positions are similar, not identical," *Perry*, 2019 WL 1146581, at *7, the factual and employment settings of Borough Command SSAs weigh against a finding they are similarly situated for purposes of collective certification.

### 2. Defenses Available to Defendants

As Defendants have conceded that they do not pay SSAs for time spent traveling between worksites and have not submitted conflicting evidence regarding supervisor knowledge, the only outstanding issue in the Borough Command SSAs' travel-time claim is damages. Individualized inquiries into damages is normally not an issue that weighs against certification. *See McGlone*, 49 F. Supp. 3d at 368-69 (concluding that, because individualized inquiries into damages do not warrant decertification, neither do the individualized defenses related to damages). Accordingly, this factor weighs in favor of a finding that Borough Command SSAs are similarly situated.

### 3. Fairness and Procedural Considerations

Even as a comparatively small subgroup, the policy objectives of reducing costs and conserving judicial resources are served by granting final certification for Borough Command SSAs. *See id*. at 369 (concluding that fairness and procedural considerations weighed in favor of certifying a class of nineteen opt-in plaintiffs); *Briceno v. USI Servs. Grp., Inc.*, No. 09 Civ. 4252, 2015 WL 5719727, at *11 (E.D.N.Y. Sept. 29, 2015) (concluding that fairness and procedural considerations "weigh[ed] heavily" in favor of a collective action, where plaintiffs were "unsophisticated, minimum-wage-workers," making it "unlikely that [they] would be able to successfully bring claims on their own"). Litigating the damages portion of the travel-time claim for each Borough Command SSA would be burdensome for all parties, even as to this smaller subgroup. *See McGlone*, 49 F. Supp. 3d at 369 (concluding that "litigating overtime

claims for [nineteen opt-in plaintiffs] would be burdensome on [p]laintiffs, [d]efendants, and the courts"). Accordingly, this factor also weighs in favor of a finding that Borough Command SSAs are similarly situated.

Defendants arguments against certification for the Borough Command are addressed above and support the Court's finding that their factual and employment settings weigh against collective certification. However, this factor is not dispositive. Because the travel-time portion of the Off the Clock Claim arises out of a common policy and practice applicable to all SSAs and the fairness and procedural considerations weigh in favor of certification, the Court finds that Borough Command SSAs are similarly situated with respect to the travel-time work portion of the Off the Clock Claim.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for final certification is GRANTED as to all surviving claims. The following collective is certified: all current and former School Safety Agents ("SSAs"), employed by the New York City Police Department's School Safety Division at some point since June 8, 2014, who have consented to join this action, for the litigation of the Regular Rate, Prompt Payment and Straight Time Claims, as defined above. The collective is divided into three sub-groups as follows, for the litigation of the following claims:

- School-Based SSAs for all aspects of the Off the Clock Claim,
- MTF SSAs for all aspects of the Off the Clock Claim and
- Borough Command SSAs for the travel-time portion of the Off the Clock Claim.

Dated: February 26, 2020
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

16