

Gregory McGillivary
gkm@mselaborlaw.com

June 5, 2020

<u>VIA ECF</u>
Hon. Lorna G. Schofield
United States District Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Worley et al. v. City of New York and NYPD,* Case No.: 17-cv-4337 (LGS)

Dear Judge Schofield:

We write to provide the supplemental information requested during the June 4, 2020 Settlement Approval Conference and in your Order of the same date. (Dkt. 228).

**I.   Plaintiffs' Counsel Sent Engagement Letters to Each Plaintiff Explaining the Terms of Representation and Enclosing a Fully Executed Copy of That Plaintiff's Retainer Agreement**

Plaintiffs' Counsel mailed an engagement letter to each plaintiff that described the claims in the case and the terms of representation. Specifically, consistent with the fully executed retainer agreement enclosed with the letter, the letter explained that Plaintiffs' counsel is representing each Plaintiff on a one-third contingency fee basis. The engagement letter also provided each Plaintiff with the username and password for the law firm's secure client website for this case to obtain updates and other information about the case, and advised each Plaintiff to retain relevant documents related to the claims. The engagement letter sent to each Plaintiff enclosed that Plaintiff's retainer agreement., which had been fully executed by the law firm and the client. McGillivary Decl, Ex. 1 (Worley Engagement Letter and Signed Retainer Agreement).

**II.  During the Course of the Litigation, Plaintiffs' Counsel Posted Ten Website Updates Providing Plaintiffs with Detailed Information About the Case**

Plaintiffs' Counsel posted ten website updates during this litigation providing the Plaintiffs with detailed information about their claims and the status of the case.

Each of the website updates specifically provides detailed information about the claims at issue in the case, the case status, the terms of representation (including that Plaintiffs' counsel is representing each Plaintiff pursuant to a one-third contingency fee agreement), and instructions to each Plaintiff to maintain and provide Plaintiffs' counsel with documents regarding their claims. Additionally, each website update provided the Plaintiffs with contact information to reach Plaintiffs' Counsel with questions about the claims in the case and case status. McGillivary Decl., Ex. 2-11.

In addition to the information above, the website updates provided the following information.

### A. Pre-Settlement Updates

- On July 14, 2017, Plaintiffs' Counsel posted the first website update notifying the Plaintiffs that the lawsuit had been filed, describing the statutory recovery period, and explaining that other eligible SSAs who are interested in joining the case must contact Plaintiffs' Counsel to join the case. McGillivary Decl., Ex. 2.

- On December 22, 2017, Plaintiffs' Counsel posted a website update explaining that the Parties were working to negotiate a joint stipulation on discovery, and explaining what discovery is and how it is used by the Parties in a lawsuit. Plaintiffs' Counsel also informed the Plaintiffs that the Defendants provided data necessary to calculate damages. McGillivary Decl., Ex. 3

- On July 10, 2018, Plaintiffs' Counsel posted a website update explaining that discovery had commenced, that the Discovery Plaintiffs had provided written discovery responses, and that the Parties were working to schedule Plaintiff depositions and depositions of Defendants' witnesses. McGillivary Decl., Ex. 4.

- On April 18, 2019, Plaintiffs' Counsel posted a website update notifying the Plaintiffs that the firm's name changed to McGillivary Steele Elkin LLP, and providing updated email addresses for the MSE attorneys. This update also explained that the Parties were in the process of briefing summary judgment to the Court, and that an update following the Court's ruling on summary judgment would be posted once the Court ruled. McGillivary Decl., Ex. 5.

- On February 13, 2020, Plaintiffs' Counsel posted a website update explaining, in detail, the Court's ruling on summary judgment for each of the claims at issue, and explaining that the parties were awaiting a decision on the Plaintiffs' motion for a finding that the Plaintiffs are similarly situated, and what that meant. McGillivary Decl., Ex. 6.

### B. Updates Related to Settlement

- On March 26, 2020, Plaintiffs' Counsel posted a website update explaining that the City had expressed interest in settlement and notifying the Plaintiffs of the six Plaintiffs who would serve on the settlement team, (i.e., Plaintiffs Iquanna Smalls, Petal Isaacs, Dolores Corsey, Jaime Carreras, Elizabeth Caraballo, and Corrine Tolliver). Counsel explained that each of these settlement team members participated in discovery and represented a cross section of the job categories and work locations at issue in this case. Counsel notified the Plaintiffs that that the settlement team would have the authority to review settlement proposals and to **recommend** a settlement to the Plaintiffs, which each plaintiff

would have the opportunity to review, and accept or object to any recommended settlement. This website update also explained that in the event a settlement could not be achieved, that trial would commence on May 4, 2020. The update further explained how a trial would proceed, and further summarized the Court's recent decisions on summary judgment and the Court's ruling that the Plaintiffs could proceed to trial using representative evidence because the Plaintiffs are similarly situated. McGillivary Decl., Ex. 7.

- On April 30, 2020, Plaintiffs posted a website update explaining that a tentative settlement had been reached, and that each Plaintiff would receive in the mail a letter explaining the terms of the settlement in detail. This update explained that each Plaintiff would have the opportunity to accept or object to the settlement. The website update itself also explained the terms of the settlement agreement in detail, the manner in which the funds were being distributed, the service awards, the distribution methodology, and the fact that one-third of the total settlement after expenses are deducted would account for attorneys' fees and expenses, consistent with the Plaintiffs' retainer agreements with Plaintiffs' Counsel. McGillivary Decl., Ex. 8. Additionally, on April 30, 2020, Plaintiffs' Counsel included links on the website to the signed settlement agreement itself, which was filed with the Court on May 8, 2020 (Dkt. 217.1), and to a chart setting forth each Plaintiff's recovery in detail, including the exact amount of attorneys' fees and expenses each Plaintiff would pay from their recovery, the portion of their settlement amount that was backpay and the amount that was being paid to them as liquidated damages. McGillivary Decl., Ex. 9.

- On May 15, 2020, Plaintiffs added to the April 30, 2020 website updated information about the Settlement Approval Conference, providing the conference call-in number that Plaintiffs could use to call into the Settlement Approval Conference. McGillivary Decl., Ex. 10.

- On May 29, 2020 (McGillivary Decl., Ex. 11), Plaintiffs' counsel posted the revised amounts for each Plaintiff. The revised document contained updated, increased settlement amounts for each Plaintiff to account for the dismissal of the 14 individuals who confirmed their ineligibility after the settlement letters were mailed. (Dkt. 224). This settlement damages chart, which was initially posted on April 30, 2020, allowed each Plaintiff the opportunity to review *all of the plaintiffs'* settlement amounts and recovery periods. For example, each Plaintiff could see that Plaintiff Worley has 247 weeks of eligibility based on the date that her claim was filed in Court, that her total gross settlement allocation (before attorneys' fees, expenses, and service awards) is $8,068.83, and that of that amount, $3,274.58 is backpay, $2,677.42 is her share of the one-third contingency fee after expenses, $36.58 is her share of litigation expenses, $1,080.26 is net liquidated damages, $1,000.00 is her service award, thus making her ***total net settlement award*** (backpay plus net liquidated damages plus service awards, after attorneys' fees and expenses are deducted) **$5,354.83.** McGillivary Decl., Ex. 12.

- On June 3, 2020, Plaintiffs' Counsel posted an additional website update notifying the Plaintiffs that the Court modified the time of the Settlement Approval Conference from 2:30 PM on June 4, 2020 to 10:00 AM. McGillivary Decl., Ex. 13.

### III. Plaintiffs' Counsel Sent Each Plaintiff a Detailed Letter Explaining the Settlement

On April 29, 2020, Plaintiffs' Counsel mailed each Plaintiff a 6-page letter explaining in detail the settlement, the point allocation for each Plaintiff, the mechanism for disputing the point allocation, the specific terms of the settlement including the settlement amounts allocated to the Plaintiffs, the Service Awards, the expenses recovered as part of the settlement, the fact that one-third of the settlement fund after expenses are deducted would be paid to Plaintiffs' Counsel as attorneys' fees consistent with the Plaintiffs' retainer agreements, the fact that the Court would schedule a Settlement Approval Conference, and that Plaintiffs' Counsel would post information about the date, time and call-in information for the conference on their website. This letter also again provided the Plaintiffs with the username and password for the confidential website. Finally, the letter describes how to value the settlement amount with respect to the claims in the case. McGillivary Decl., Ex. 14.

### IV. The Reaction of the Plaintiffs to the Settlement Has Been 100% Positive

Since the settlement was reached, Plaintiffs' Counsel has fielded over 1,000 inquiries from Plaintiffs through calls and emails, with the vast majority of inquires focused on ensuring the firms had updated contact information for the Plaintiffs, and inquiring when payment could be expected. Patel Decl., ¶ 3. Not a single Plaintiff objected to the settlement and none disputed their allocation of the damages or assigned points. *Id.* at 4.

Additionally, many Plaintiffs accessed the website to review the settlement. In total, the case website has 1,487 hits after the March 23, 2020 website update, which was the first update regarding potential settlement. Patel Decl., ¶ 5.

### V. The Sixty Three Percent Net Recovery to the Plaintiffs is Higher Than the Recovery Approved in Comparable Cases

Additionally, as requested, we are providing the Court with further authority regarding the Plaintiffs' level of success in this case. Plaintiffs achieved a tremendous level of success reflected in the Plaintiffs' net recovery after attorneys' fees, expenses, and service awards are deducted from the settlement.

The Settlement results in a non-reversionary $18,338,364.10 Net Settlement Fund for the 3,867 Plaintiffs. The Net Settlement Fund, which is the amount to be distributed to the Plaintiffs *after fees, expenses, and service awards are deducted*, represents 63% of the Plaintiffs' total claimed damages using a full 3-year recovery period and **a full award of liquidated damages**. Another way to view the Net Settlement Fund is that it represents 100% of the backpay Plaintiffs would have sought at trial and an amount equal to 33% of that backpay as liquidated damages.

The percentage of recovery to the Plaintiffs in this case is **greater** than the net settlement recovery in comparable FLSA settlement agreements negotiated in other large collective actions. For example:

- In *Brown v. New York City Housing Authority*, 1:16-cv-9263(RA) (S.D.N.Y. September 14, 2018), Dkt. 93, the Court approved a settlement agreement in an FLSA case handled by this Firm and Spivak Lipton, involving 586 plaintiffs, which provided for a gross settlement amount of $2,250,000.00. This gross settlement amount included $10,000 in service awards, $36,068.09 in litigation expenses, $737,239.33 in attorneys' fees (one-third of the gross settlement) and $1,466,692.58 in net damages to the plaintiffs. The plaintiffs' maximum recovery if they won on all asserted claims at trial was estimated at $12,132,905.00. Therefore, the net settlement accounted for **12%** of the plaintiffs' total possible recovery. McGillivary Decl., ¶ 17. The settlement was approved.

- In *Lewis v. New York City Housing Authority*, 1:17-cv-00294-PKC-KNF (July 27, 2018), Dkt. 88, the Court approved a settlement agreement in an FLSA case handed by this Firm and Spivak Lipton involving 1,615 plaintiffs, which provided for a gross settlement amount of $2,950,000. This gross settlement amount included $16,500 in service awards, $66,527.66 in litigation expenses, $961,157.44 in attorneys' fees (one-third of the gross settlement) and $1,905,814.90 in net damages to the plaintiffs. The plaintiffs' maximum recovery if they won everything at trial was $7,906,792. Therefore, the net settlement provided **24%** of the plaintiffs' total possible recovery. McGillivary Decl., ¶ 18.

- In *Brack v. Metropolitan Transit Authority*, 1:18-cv-00846-SJB (April 26, 2019), Dkt. 80, (E.D.N.Y.),a case handled by this Firm, the Court approved a settlement agreement and a one-third contingency fee in an FLSA case involving 432 Plaintiffs where the gross settlement amount was $1,356,250, and the Court noted that the plaintiffs' net settlement fund was $577,021.36 and the maximum recovery was $1,676,567.28 ($1,377,541.61 for one subgroup of plaintiffs and $299,025.67 for the second subgroup of plaintiffs). This reflects a **34%** recovery of the plaintiffs' potential maximum recovery. *See also*, *Brack* Dkt. 80 at p. 5-6 (analyzing the range of recovery if backpay but not liquidated damages were recovered for a three-year period, and if backpay but not liquidated damages were recovered for a two year period).

- In *Hart v. RCI Hosp. Holdings*, 2015 U.S. Dist. LEXIS 126934, at *44 (S.D.N.Y. Sep. 22, 2015), an FLSA/Rule 23 Hybrid involving 2,208 plaintiffs, the Court approved requested attorneys' fee of $4,928,949.74 representing 32.9% of the gross settlement amount of $15 million where the net settlement amounts to the Plaintiffs represented approximately **40%** of the maximum damages recoverable after attorneys' fees and expenses were excluded.

Indeed, here, the percentage of recovery exclusive of attorneys' fees and costs is significantly higher than the ranges that have been found to be reasonable in other less complicated FLSA settlements that included a one-third contingency fee. *See Rojas v. Pizza*

*Pete's LLC*, 2019 U.S. Dist. LEXIS 149717, 2019 WL 4447578, *5 (S.D.N.Y. Sept. 3, 2019) (**net settlement of 36%** of total alleged damages after deducting costs and counsels' one-third contingency fee is "clearly reasonable given the uncertainties inherent in any litigation," where gross settlement was $100,000 and net settlement to Plaintiff was $66,205.33 after deducting costs and one-third contingency fee); *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. 2017) (**net settlement of 40%** of FLSA plaintiffs' maximum recovery is reasonable in case involving two plaintiffs where gross settlement was $172,579.20 and the net settlement amount to plaintiffs after costs and the one-third contingency fee were deducted was $113,733.61); *Redwood v. Cassway Contracting Corp.,* 2017 WL 4764486, at *2 (S.D.N.Y. 2017) (**net settlement of 29.1%** of FLSA plaintiffs' maximum recovery is reasonable in case involving two plaintiffs where total gross settlement was $35,000.00, net settlement to plaintiffs was $22,825.27 and plaintiffs' counsel received one-third contingency fee); *Ceesae v. TT's Car Wash Corp.*, 2018 U.S. Dist. LEXIS 1796, 2018 WL 1767866, at *6-7 (E.D.N.Y. Jan. 3, 2018), adopted by, 2018 U.S. Dist. LEXIS 20237, 2018 WL 741396 (**net settlement of 50%** of FLSA/NYLL plaintiff's maximum recovery is reasonable where gross settlement was $37,500, plaintiff received $24,590 and plaintiff's counsel received one-third of the settlement); *Garcia v. Cloister Apt Corp.,* 2019 U.S. Dist. LEXIS 51887, at *5 (S.D.N.Y. Mar. 27, 2019) (plaintiffs' net settlement of $33,333.34 after the deduction of attorneys' fees and costs **representing more than 28% of their total alleged damages** is reasonable and approving one-third contingency fee to plaintiffs' counsel).

Given that this net settlement provides for **far greater** relief to the Plaintiffs than in smaller, more straightforward FLSA cases as well as larger cases cited above, all of which involved approval of a one third contingency fee,[1] it is evident that the recovery to the Plaintiffs in this complex, multi-plaintiff FLSA case is outstanding and unique, and this justifies the negotiated one-third contingency fee in this matter.

---

[1] Of course, collective actions are fundamentally different from Rule 23 class actions in that plaintiffs are not bound by the settlement terms unless they affirmatively op-in to the case. This case is also unique in the FLSA arena in that each plaintiff individually joined the case as an individual plaintiff, and the two step notice process that exists in most FLSA collective actions did not occur. Moreover, in a class action, only the representatives determine the terms of the settlement, and the entire class, (in an employment case this is the entire workforce) is bound by the settlement unless they affirmatively opt-out. In contrast, here, each individual Plaintiff was fully and repeatedly notified of the status of the case and the terms of the settlement; each Plaintiff signed a retainer agreement with our law firm; and each individual Plaintiff had the opportunity to reject the settlement. None did and, instead, they have been uniformly pleased with the settlement terms.

Hon. Lorna G. Schofield

     For this reason, and for all of the reasons cited in the Parties' settlement papers, Plaintiffs respectfully request that the Court issue an Order approving the Settlement Agreement in its entirety.

                    Sincerely,

                    McGILLIVARY STEELE ELKIN LLP

                    /s/ Gregory K. McGillivary
                    Gregory K. McGillivary

cc: All Counsel of Record (vis ECF)