# Exhibit 14



Molly Elkin
mae@mselaborlaw.com

April 29, 2020

Rhakeema Worley
285 W 150th St Apt 8
New York  NY  10039-2336

Re:     *Worley, et al., v. The City of New York*, 1:17-cv-04337-LGS
        (FLSA Lawsuit for NYPD School Safety Agents)
        Notification to Settlement Team Members and Discovery Plaintiffs

Dear Plaintiff:

As you know, you are a plaintiff in the above-referenced Fair Labor Standards Act (FLSA) overtime case. Along with New York City attorney Hope Pordy of Spivak Lipton LLP, we represent you and 3,879 other NYPD employees who are, or were, employed as School Safety Agents. We are pleased to inform you that we have reached a tentative settlement of your claims, which was approved by a Settlement Team. Each individual Plaintiff's settlement amount is based on the number of weeks of employment as an SSA during the recovery period.  **PLEASE REVIEW THE INFORMATION SET FORTH BELOW VERY CAREFULLY TO ENSURE THAT YOUR SETTLEMENT POINT ALLOCATION IS CORRECT.  IT IS BASED ON DATA PROVIDED TO US BY THE CITY.**

   I.     **Your Points and Your Tentative Settlement Amount**

Please contact us **by email** at **info@mselaborlaw.com by no later than May 15, 2020** with supporting documentation if you believe that the below NYPD data regarding your employment dates is incorrect.  **If you do not respond by May 15, 2020, the information below will be used to calculate your damages.**

Your **Court File Date** of 06/08/17 is the date your consent form was filed with the Court. Your **Eligibility Start Date** of 06/08/14 is three years prior to the date your consent form was filed. Therefore, your **Recovery Start Date**, which is the date that you began working as an SSA for the NYPD, or your **Eligibility Start Date** listed immediately above, whichever is *later*, is 06/08/14. Your **Recovery Period End Date,** which is 04/22/20 or your separation date due to retirement or other reasons, whichever date is *earlier*, is 03/02/19.  Therefore, your **Total Weeks of Eligibility**, which is the number of weeks between your Recovery Period Start Date and your Recovery Period End Date is 247.

For each week of eligibility, you received one point. Your damages are based on the number of points that you receive multiplied by the dollar value of each point. Assuming there are no disputes by any Plaintiffs as to the length of their recovery period, the value of a point is $17.62.  **If there are valid disputes, the value of a point will go down**.  **We will continue to**

---

[1] Even if you began working as an SSA many years ago, the most the law allows us to recover is three years prior to the date that a plaintiff's claim was filed in Court.

**update our website with changes regarding the value of a point. Also, once the settlement agreement is signed, you may review the agreement and the distribution amounts on our website**. [2]

The gross amount of your award after fees and expenses are deducted, inclusive of your Service Award, (explained below) is $5,353.63**.** This includes $3,273.67 in Gross Backpay and $1,079.96 in Net Liquidated Damages, and a Service Award of $1,000.00 **Again, these amounts may change if there are any disputes that change the value of a point.** The City will withhold taxes from your backpay amount because backpay awards, by law, must be treated as wages for tax purposes. The Liquidated Damages and your Service Award are considered taxable income, but no taxes will be withheld. Instead, we will send you a 1099-MISC form in January 2021.

Based on our expert's interpretation of NYPD's employment data, it appears that the average gross amount of an award *after* the contingency fee, expenses, and service awards are paid is approximately $4,726.  The shorter time one may have worked as an SSA during the recovery period will mean fewer points and less of an award for that plaintiff compared to someone with a longer recovery period. If you wish to review other plaintiffs' awards, you can access that information on our secure website. You can also review the entire settlement agreement there as well.

In exchange for the settlement payment, you are releasing the City and NYPD from all wage and hour claims asserted in this case, and all federal, state and/or local statutory wage and hour claims that could have been asserted in this case, up through 04/22/20.

II.   **The Settlement Terms**

**The Settlement Agreement provides that the City will pay a Total Settlement Amount of $27,747,075.22**  to resolve all of plaintiffs' FLSA claims.

The Total Settlement Amount will be divided as follows:  (1) Individual backpay checks/direct deposits made payable to the plaintiffs in the total amount of **$13,789,357.12**  (and as described further below); and (2) One "Lump Sum" check made payable to Plaintiffs' Counsel in the amount of **$13,957,718.10,** which will be distributed by Plaintiffs' Counsel as  liquidated damages to the plaintiffs, service awards, and attorneys' fees and expenses.

Specifically, under the settlement agreement, the **Lump Sum** ($13,957,718.10) will be allocated as follows:

---

[2] To review this information, go to www.mselaborlaw.com and click on "Find My Case" in the top right corner. From there you will scroll to the bottom of the page and locate the "Worley, et al. v. New York City Police Department (School Safety Agents NYPD) case page, or type "Worley" in the search bar. Once you have selected that page, it will ask for a password. Please use the password "SAFETYFIRST" At the bottom of the status update, you may click on the specific attachment listing the plaintiffs' settlement amounts.

- Net Liquidated Damages in the amount of **$4,549,006.98** (i.e., excluding Service Awards, attorneys' fees and expenses as detailed below);
- Service Awards in the total amount of **$57,000.00** to be paid to the six Settlement Team Members who also participated in discovery and depositions, and to the 45 Discovery Plaintiffs who helped bring this case to its successful conclusion by responding to the City's discovery requests, providing additional information to our legal team in support of Plaintiffs' claims and by being deposed, **including you;**[3]
- Reimbursement of **$154,029.05** in out of pocket litigation expenses to Plaintiffs' Counsel; and
- **$9,197,682.07** as a contingency fee to Plaintiffs' Counsel, which is equal to 33 and 1/3% of the Total Settlement Amount after litigation expenses are deducted.[4]

Set forth below is an explanation of the claims in the case, how we arrived at the Total Settlement Amount, and the settlement distribution methodology, assuming the Court approves the settlement. To become final, in an FLSA collective action case such as this one, the Court must review the terms of the settlement agreement and conclude that the settlement is fair and reasonable. **In addition, the Court must specifically approve the Service Awards. This is why we have asked you to submit a declaration regarding your service to the class. If you have not yet signed and returned your declaration, please do so immediately, or you risk the Court denying you the Service Award we have allocated to you.**

Given the nature and complexity of the claims in the case, the procedural posture of the case when the parties reached the settlement, the substantial and successful work performed by Plaintiffs' Counsel in advancing and litigating the claims, the risks associated with a jury deciding liability on the claims left for trial, and deciding damages on all of the claims, and, most importantly, the excellent results obtained in this settlement, we are confident that the Court will approve the settlement as fair and reasonable.

After consultation with Plaintiffs' Counsel, the Settlement Team recommended approval of the settlement and we notified the City's attorneys that we had a settlement in principle subject to notification to the remaining plaintiffs. Based on the controlling law and facts of the case, we believe that the settlement is fair and reasonable, and we will strongly recommend to the Court that the settlement be approved. The Court will schedule a settlement approval conference in the next few months.[5] We will post the date, time, and location and/or call-in information on our website once the conference is scheduled. We will also provide information on how to object on our website. ***If you do not object to the settlement you do not have to do anything, and you do not have to attend the Court's settlement approval conference.***

---

[3] The six Settlement Team members will each receive a $2,000.00 Service Award under the terms of the proposed settlement. The 45 Discovery Plaintiffs will each receive a $1,000.00 Service Award.

[4] Each plaintiff signed a Retainer Agreement with Plaintiffs' Counsel setting forth the 33 1/3% contingency fee arrangement for payment of attorneys' fees and costs.

[5] In light of Court closures, and the suspension of regular Court proceedings, the Court may conduct the settlement approval conference via teleconference so as not to delay the settlement. If you agree to the terms of the settlement, you do not have to participate in the conference.

### III.     The Claims in the Case

This case was filed in federal court in June 2017, after several months of thorough investigation of the claims to be asserted in the lawsuit. Following years of litigation, consisting of extensive discovery involving randomly selected Discovery Plaintiffs and voluminous document production on behalf of both plaintiffs and defendants, this case was scheduled to proceed to trial on May 4, 2020.  As part of the extensive discovery process, 51 Discovery Plaintiffs participated in lengthy depositions and we conducted several depositions of City witnesses, including the acting Corporation Counsel. Once discovery was complete, the parties filed cross motions for summary judgment for the purpose of having some claims and issues decided by the Court in advance of a trial. The City also filed a motion to decertify the class asking the Court to have each of the 3,880 plaintiffs' claims heard separately.  We were successful in defeating the City's efforts to undermine this collective action case and we received a favorable decision from the Court on a number of the issues advanced as part of plaintiffs' summary judgment.

Specifically, this case concerns alleged overtime violations in weeks in which you worked more than 40 hours.  The six FLSA claims are:

(1) Failure to pay time and one-half overtime pay for all approved overtime hours ("**Straight Time Claim**");

(2) Failure to include certain differentials in your overtime pay rate ("**Overtime Pay Rate Claim**");

(3) Late payment of overtime for overtime that the City eventually paid, but paid more than 35 days after the date that the approved overtime was worked (**"Late Payment Claim"**);

(4) Failure to pay overtime for work performed pre-shift setting up for the work day ("**Pre-Shift Claim**");

(5) Failure to pay for post-shift work time traveling to a second worksite following your regular shift ("**Travel Time Claim**"); and

(6) Failure to pay for work performed during unpaid meal periods ("**Meal Period Claim**").

On February 13, 2020, the Court issued various rulings on the above-claims. Specifically, the Judge ruled in favor of the plaintiffs on their Travel Time Claim and . found that the plaintiffs presented unrebutted evidence that SSAs perform uncompensated work when they travel to a second worksite following their normal shift but left the amount of damages related to this claim up to the jury to decide. The Court also ruled in favor of plaintiffs on their Overtime Pay Rate claim, concluding that the City improperly calculated the SSAs' rate of pay by dividing their annual salary by the *assumed* days and hours in a year, instead of dividing their weekly salary by *actual* hours worked in a workweek; by failing to include meal allowances in the

calculation of regular rate of pay; and by failing to include night-shift differentials in the calculation of regular rate of pay. The Judge also ruled in plaintiffs' favor on their Straight Time Claim, concluding that the City improperly paid plaintiffs for overtime at a straight time rate on some occasions. However, the Judge found that there were triable issues of fact with respect to plaintiffs' Pre-Shift and Meal Period claims that would need to be decided by a jury.

### IV.  What the Settlement Amount Represents

While no one knows how a jury would have ruled on the remaining claims to be tried (namely, the Pre-Shift Claim, Late Payment Claim, Meal Period Claim, and the amount of damages, *if any*, associated with these claims), we reached a settlement that provides ***significant, if not full, relief on all claims***. During the discovery process, the City produced payroll and CityTime data through January 2018 to aid in our damages calculations. The City recently updated its data production to provide termination dates for the plaintiffs who left their NYPD employment after January 2018 to capture plaintiffs' periods of employment as SSAs.

The settlement damages calculations apply a three-year lookback recovery period (i.e., three years back from the date your consent to join form was filed in Court). The FLSA provides for only a two-year lookback recovery period (i.e., two years back from the date your consent to join form was filed in Court), which is only extended to 3 years if the plaintiffs are able to prove to a jury that the employer recklessly violated the law. By including a 3-year lookback in this settlement, we achieved the maximum recovery period without having to win that important issue at trial. In addition, the Total Settlement Amount includes liquidated damages equal to the backpay owed on the Straight Time Claim, Overtime Rate Claim, and Travel Time Claim, and liquidated damages equal to 75% of the backpay on the remaining claims (i.e., Pre-Shift and Meal Period Claims).[6] The City would have had an opportunity to avoid liquidated damages if it proved to the Court that its actions were in good faith and reasonable.

Based on the foregoing, one way to look at the Total Settlement Amount is that it represents full backpay recovery and 100% liquidated damages on the Straight Time Claim, Overtime Rate Claim, and Travel Time Claim. With respect to the Pre-Shift and Meal Period Claims, it also includes back pay for an estimated 30 to 60 minutes for time worked during meal periods each week during the recovery period, and 15 minutes of pre shift worked each day for the positions and schedules that required pre-shift work. Time worked during meal periods varied based on different job assignments and we relied upon summary evidence provided during discovery to rely on this average and calculate damages. Similarly, we estimated 15 minutes of pre-shift time for each shift work based on other summary evidence reflecting the amount and type of pre-shift worked by most SSAs.

---

[6] The Late Payment claim is only a liquidated damage claim because SSAs were eventually paid their approved overtime, so full relief on that claim would have been backpay equal to the amount of the late paid overtime. We obtained 75% of that amount as settlement damages on the Late Payment Claim. In other words, if a plaintiff was paid $100 in overtime pay, but was paid more than 35 days after the overtime was worked, the settlement values that late payment as equal to liquidated damages in the amount of $75.

Because it is impossible to know which of the remaining claims (Pre-Shift, Meal Period, and Late Payment) we would have won at trial, and, as importantly, the amount of damages associated with each of the six claims in the lawsuit that may have been awarded by the jury, the Settlement Team, in consultation with Plaintiffs' Counsel, agreed that the fairest way to distribute the settlement monies is based on the number of workweeks each plaintiff was employed by NYPD as an SSA during the recovery period as described in Section I.

Finally, the Total Settlement Amount includes an amount payable for statutory attorneys' fees and expenses, which, pursuant to our retainer agreements with each plaintiff, increased the total amount of the settlement from which your damages were calculated and upon which our contingency fee is based. After the expenses are deducted from the Total Settlement Amount, the 33 and 1/3 percent contingency fee is applied for the payment of attorneys' fees and expenses. After the expenses, contingency fee, and Service Awards are deducted from the Total Settlement Amount, **$18,338,364.10** will be distributed to the 3,880 Plaintiffs assuming the Court approves the settlement.

Should you have any questions, do not hesitate to contact us at **info@mselaborlaw.com**

Sincerely,

McGILLIVARY STEELE ELKIN LLP

*[signature]*

Molly A. Elkin

cc: Hope A. Pordy, Esq., Spivak Lipton LLP

6